Clark C. PETERSON, Bonnie J. Peterson, Ralph E. Klopatek, Frank J. Bauza, Jr., Anthony J. Artega, and Sylvian Piskula, Plaintiffs-Appellants,†

v.

CITY OF NEW BERLIN, Defendant-Respondent.††

Court of Appeals

*No. 89-0254. Argued November 9, 1989.—Decided January 17, 1990.*

(Also reported in 453 N.W.2d 177.)

†Petition to review denied.

††Petition to cross review denied.

On behalf of the plaintiffs-appellants, there were briefs and oral argument by *H. Stanley Riffle* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha.

On behalf of the defendant-respondent, there was a brief and oral argument by *Steven J. Lownik* of *Schober & Radtke, S.C.* of New Berlin.

Before Brown, P.J., Scott and Nettesheim, JJ.

SCOTT, J. Clark and Bonnie Peterson appeal from a judgment affirming special assessments for water and sewer improvements the city of New Berlin levied against their property pursuant to sec. 66.60(1), Stats. The judgment also awarded costs to the city. They contend the assessments were not made on a reasonable basis and were made without consideration of benefits conferred. Because we agree that the assessments were not made on a reasonable basis, we reverse and direct the trial court to reduce the Petersons' assessment.

On September 11, 1986, the city, through its common council, adopted Resolution No. 26-86 (Revised). The city thereby declared its intention to exercise its police powers to authorize water and sewer improvements and levy special assessments against benefited property in a subdivision known as the Kelly Lake/Hales Heights/Maryknoll/Orchard Valley Area Assessment District (district). The Petersons own a parcel of land in the district. Approximately ninety-five percent of the parcels in the district are half-acre, single-family residential lots essentially varying only in their configuration. For instance, because of their locations on winding streets, some of the lots are "pie-shaped." Consequently, a lot with small frontage and a large backyard adjoins a lot of similar size but with large frontage and a small backyard.

368

Prior to adoption of the resolution, the city had prepared an assessment roll based upon the city's customary assessment approach, the front foot method. A public hearing was held on May 31, 1986. There, the front foot method encountered citizen opposition sufficient to persuade the city to postpone a decision until an assessment roll based on the unit method could be prepared.

A second hearing, held on September 3, 1986, heard proponents of both assessment methods. Of those speaking out, approximately fifty-five percent supported the front foot method, primarily because their assessments would be higher under the unit method. Front foot supporters also argued that since residents were told when they purchased a lot that it was the city's policy to use the front foot method, they had factored that information into their decision to purchase a particular lot. By contrast, proponents for the unit method contended that the unit method was fairer because it assessed everyone equally for an equal benefit and diminished the harsh inequities those owning lots with unusual geometric boundaries would otherwise bear.

The Petersons received notice of both the May 31 and the September 3 hearings. The notice of the latter informed them of the two assessment methods being considered and what their particular assessment would be under each method. Their assessment under the front foot method would be $1110.55 higher than under the unit method.

The week after the second hearing, the common council decided 4–2 to adopt the front foot method. On December 12, 1986, the Petersons filed a complaint primarily alleging that the method of assessment adopted by the city failed to satisfy the "reasonable basis"

requirement of sec. 66.60(1)(b), Stats.[1] At trial, the court noted that the city arrived at its decision to use the front foot method of assessment only after giving interested citizens the opportunity at two public hearings to state their positions and objections and after discussion by the mayor and each council member. Also, the court judicially noticed that most municipalities use the front foot method. The court refused to upset the city council's decision, finding no evidence in the record that the assessment method was unreasonable or arbitrarily selected. The Petersons appeal.

The trial court's determination that the special assessment was made upon a reasonable basis involves determinations of both fact and law. We will uphold the trial court's factual findings unless they are clearly erroneous. Sec. 805.17(2), Stats. Whether those facts fulfill the legal standard of reasonableness is a question of law on which we need not defer to the trial court's determination. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

A municipality may make special assessments based upon the exercise of its police power. Sec. 66.60(1), Stats. The police power of a municipality is broad and, in general, the courts may intercede only when the exercise of that power is clearly unreasonable. *City of Milwaukee v. Piscuine,* 18 Wis. 2d 599, 609, 119 N.W.2d

---

[1] An amended complaint was filed on July 9, 1987, for the first time naming as plaintiffs Ralph E. Klopatek, Frank J. Bauza, Jr., Anthony J. Artega and Sylvian Piskula. Because the amended complaint was filed well after the ninety days specified by sec. 66.60(12)(a), Stats., the trial court dismissed all but the Petersons from the action. That dismissal is not challenged on appeal.

442, 447–48 (1963). However, when levying special assessments under the police power, there are two additional legislatively mandated requirements: that the property be benefited and that the assessment be made upon a reasonable basis. Sec. 66.60(1)(b); *Gelhaus & Brost, Inc. v. City of Medford,* 144 Wis. 2d 48, 51, 423 N.W.2d 180, 181–82 (Ct. App. 1988). Thus, not only must the *exercise* of the police power be reasonable; its *result* must be reasonable as well. An assessment is made upon a reasonable basis if it is fair and equitable and in proportion to the benefits accruing. *Id.* at 52, 423 N.W.2d at 182.

An aggrieved party may challenge the assessment by timely appeal to the circuit court. Sec. 66.60(12)(a), Stats. The challenger bears the burden of going forward, *see State v. McFarren,* 62 Wis. 2d 492, 499–500, 215 N.W.2d 459, 463 (1974), and must overcome the presumption that the municipality proceeded regularly. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 124–25, 334 N.W.2d 580, 586–87 (Ct. App. 1983). Once the Petersons establish a *prima facie* case, the burden shifts to the city to show that the chosen assessment method comported with the statutory requirement that it be reasonable. *See Berkvam v. City of Glendale,* 79 Wis. 2d 279, 286–87, 255 N.W.2d 521, 524–25 (1977).

We are satisfied that the following undisputed facts are sufficient to put in doubt the fairness, and thus the reasonableness, of the Petersons' assessment and to shift to the city the burden of showing the reasonableness of the chosen assessment method. The district is zoned residential for single-family homes; the city's proposed water and sewer improvements would benefit all affected lots equally; under the unit method all like-sized properties in the district would have been assessed the same

amount; under the front foot method, similarly sized lots were assessed, in some instances, amounts varying by as much as $5600; and, had the unit method been used, the Petersons' assessment would have been more than $1100 lower.

At trial, other evidence was produced attacking the reasonableness of the assessment. Although he opined that the front foot method is reasonable under the statute, the city's director of public works also testified that the front foot method was "impossible to justify . . . on any . . . basis depending on fairness, equity, or common sense." The two dissenting aldermen testified that the homogenous character of the district and the equal benefit to be received compelled them to support the unit method as the more fair. Also testifying was one of the aldermen who voted for the front foot plan. He stated that upon later consideration, he believed the unit method to be fairer.

The city defended its adoption of the front foot method by pointing to its nearly unbroken quarter-century history of using that method. The city also contended that, since either method would produce some unfairness, its adoption of the front foot method was reasonable because it was procedurally fair and because an attempt was made to diminish the most severe inequities by making special adjustments for certain lots, such as those on corners or cul-de-sacs. The city also contends that the front foot method is reasonable as a matter of law. We disagree.

First, neither procedural fairness alone nor prolonged use is the measure of reasonableness. To be reasonable, the municipality's adopted assessment plan must be "fair and equitable and such that it will bring about an assessment in proportion to the benefits accru-

ing." *Gelhaus,* 144 Wis. 2d at 52, 423 N.W.2d at 182. Inherent in the requirement that the assessment be made on a reasonable basis is that it must be reasonable and apportioned fairly and equitably among the property owners. *Id.* In *Gelhaus,* the court explained by example that it would be unreasonable to assess one group of property owners by a method completely different from that used to assess another if the assessment would result in an entirely disproportionate distribution of costs among them. *Id.* We conclude it is also unreasonable to use the *same* method to assess a group of property owners when it results in an entirely disproportionate distribution of costs which easily could be avoided by using another basis for assessment.

Second, we do not agree that each method necessarily would produce some degree of "unfairness." While one method may be better suited to some situations than others, a higher assessment does not by itself render the method "unfair." The hearing minutes reflect that the gist of the objections made by unit method opponents was that the assessment using the unit method would be higher to those particular property owners than if the front foot method were used. It is human nature to champion what is to one's greatest advantage, but another outcome is not necessarily "unfair." We conclude that an assessment is unfair when property owners in comparable positions face a marked disparity in cost for the receipt of equal benefits when an alternate, more equitable, method of assessment is feasible.

Third, we disagree that the front foot method is *per se* reasonable. It is true that the front foot assessment is the most commonly used method of assessment. *Area Bd. of Vocational, Technical & Adult Educ. v. Town of*

*Burke,* 151 Wis. 2d 392, 399, 444 N.W.2d 733, 737 (Ct. App. 1989). It is also true, as the city points out, that our supreme court has on several occasions upheld the front foot method. *See, e.g., Fort Howard Paper Co. v. Fox River Heights Sanitary Dist.,* 250 Wis. 145, 26 N.W.2d 661 (1947). Nonetheless, we are not persuaded that because that assessment plan was reasonable in other instances it is reasonable in all. In fact, "that an assessment is based upon frontage is a circumstance so significant as to arouse suspicion." *Town of Burke,* 151 Wis. 2d at 399, 444 N.W.2d at 736. So while we disagree that the front foot method is reasonable as a matter of law, we also disagree that it is *un*reasonable as a matter of law. The facts of the particular situation must govern the determination of whether the assessment is made "upon a reasonable basis."

We conclude that the Petersons have made a *prima facie* showing of unreasonableness which the city has not defeated. Finding the assessment unreasonable and excessive, we reverse the judgment and remand to the trial court with directions to reduce the assessment by $1110.55, the difference between the unit and the front foot method results.

*By the Court.*—Judgment reversed and cause remanded with directions.