Elroy J. SIPPEL and Sylvia G. Sippel, Plaintiffs-Respondents-Cross Appellants,†

v.

CITY OF ST. FRANCIS, a Wisconsin Municipal Corporation, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 90-2307. Submitted on briefs July 2, 1991.—Decided September 10, 1991.*

(Also reported in 476 N.W.2d 579.)

†Petition to review denied.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Richard H. Staats,* city attorney for the City of St. Francis, of *Staats & Staats,* Cudahy.

For the plaintiffs-respondents-cross appellants the cause was submitted on the briefs of *Thomas L. Frenn* of *Frenn & Jakus,* West Allis.

Before Moser, P.J., Sullivan and LaRocque, JJ.

SULLIVAN, J.   The City appeals from a bench trial judgment requiring it to pay an apartment complex owner for a constructive taking as a result of street improvements. The owners cross-appeal from a jury verdict which found special benefits conferred upon the complex as a result of the improvements. We conclude that the owners' loss of access to twenty parking spaces does not constitute a constructive taking because the owners were not denied all or substantially all of the beneficial use of their property. We also conclude that the special benefits conferred upon the complex, as determined by the jury, is supported by credible evidence and that the special assessment amount levied by the City was reasonable. Accordingly, we reverse the judgment dated August 30, 1990; we affirm the jury finding

of special benefits conferred; and we affirm the trial court's determination that the special assessment amount is reasonable.

## FACTS

Elroy and Sylvia Sippel (the Sippels) own a 44-unit apartment complex located in the City of St. Francis at the intersection of Whitnall and Pennsylvania Avenues. Both streets carry heavy traffic and their crossing is a major intersection in the City. The Sippels' complex consists of four buildings in a trapezoid-shaped pattern with a swimming pool in the center. The east side of the complex abuts Pennsylvania Avenue and the south side abuts Whitnall Avenue. Twenty parking spaces were perpendicular to Pennsylvania Avenue, partly on the Sippels' property, and partly on the City's right of way. There was also complex parking on the City's right of way land located on Whitnall Avenue.[1] An agreement dated November 15, 1977 between the Sippels' predecessor and the City acknowledged the use of the City's right of way for the Pennsylvania Avenue parking spaces.[2] It is undisputed that the parking spaces on Pennsylvania Avenue intruded into the City's right of way.

Directly opposite the complex is a new shopping center called Whitnall Square. The construction of this shopping center triggered the need for improvements to Pennsylvania Avenue, including the addition of a median strip, the installation of new curbs and gutters, and a widening of the street from two to five lanes.

---

[1]The trial court held that the Sippels were not entitled to any type of relief for the parking on Whitnall Avenue. The parties do not dispute this determination.

[2]The City does not argue that this agreement is binding on the Sippels and therefore is not at issue.

These improvements effectively blocked access to the portion of the stalls belonging to the Sippels on Pennsylvania Avenue because the curbs and gutters prevent the tenant cars from backing out into the street.

The Sippels brought an action against the City on two bases. First, the street improvements by the City denied the Sippels access to the parking spaces on their land, resulting in a "partial taking" of their property for which they were entitled to compensation under sec. 32.09(6), Stats. Second, the special assessments levied by the City on a "per-foot" basis against the Sippels under the City's police power for the various improvements to the streets did not confer any special benefit on their property and in fact lowered the property's market value. The costs of the improvements levied against the Sippels in the form of special assessments should therefore be offset by the decline in property value.

The issue of whether there was a taking of property was tried to the court. Initially, the court determined that there was no taking. However, on a motion for reconsideration, the court reversed itself and awarded $33,200 for the taking, plus interest, attorney's fees and costs, totalling $48,018.61. It is from this judgment that the City appeals. The City argues on appeal that its use of its right of way did not rise to the level of a taking. We agree with the City and reverse.

The issue of special assessments was tried to a jury. The jury found that there were benefits conferred upon the Sippels' property.[3] The Sippels' cross-appeal asserts that there is no credible evidence to support the jury's finding of special benefits, that the court committed reversible error for not defining "special benefits" for the

---

[3]The jury answered "no" to the following verdict question: "Do the improvements of Pennsylvania Avenue fail to provide a special benefit to the Sippels' property?"

jury, and that the court erred by failing to reduce the assessment amount by the decline in property value caused by the street improvements. We agree with the court's approval of the jury's verdict.

## THE CITY'S APPEAL

Generally, taking of property by a municipality can occur either by use of police power or by eminent domain. A taking by eminent domain gives rise to an obligation to compensate the landowner. A taking by police power involves the power of government to adversely affect property interests without compensation. *More-Way North Corp. v. State Highway Comm'n,* 44 Wis. 2d 165, 169, 170 N.W.2d 749, 751 (1969). The state may take private property by eminent domain when it enhances the public good and may take private property by use of police power when it is harmful to the public welfare. *See Just v. Marinette County,* 56 Wis. 2d 7, 16, 201 N.W.2d 761, 767 (1972). The existence of a taking depends upon whether the exercise of a legal right or the implementation of a "restriction practically or substantially renders the land useless for all reasonable purposes." *Buhler v. Racine County,* 33 Wis. 2d 137, 143, 146 N.W.2d 403, 406 (1966).

All parties agree that the City's election to use its right of way on Pennsylvania Avenue by widening the road, a publicly-announced intention of almost ten years, does not constitute an actual taking of private property. What was at issue at trial and is at issue on appeal is whether the City's roadway improvements constituted a constructive taking whereby the Sippels' property was practically or substantially rendered useless. In addition, if a constructive taking has occurred, did the City take by the use of police power or eminent domain?

Section 32.09(6)(b), Stats., Rules governing determination of just compensation,[4] sec. 84.25, Stats., Controlled-access highways,[5] and Wis. Const., art. I, sec. 13[6] govern the circumstances and procedures surrounding the termination or restrictions of private property rights

[4]Section 32.09(6)(b), Stats., provides:

(6) In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist:

. . ..

(b) Deprivation or restriction of existing right of access to highway from abutting land, provided that nothing herein shall operate to restrict the power of the state or any of its subdivisions or any municipality to deprive or restrict such access without compensation under any duly authorized exercise of the police power.

[5]Section 84.25, Stats., provides:

Controlled-access highways. (1) AUTHORITY OF DEPARTMENT; PROCEDURE. The legislature declares that the effective control of traffic entering upon or leaving intensively traveled highways is necessary in the interest of public safety, convenience and the general welfare. The department is authorized to designate as controlled-access highways the rural portions of the state trunk system . . .. If the department shall then find that the average traffic potential is as provided by this subsection, and that the designation of the highway as a controlled-access highway is necessary in the interest of public safety, convenience and the general welfare, it shall make its finding, determination and declaration to that effect, specifying the character of the controls to be exercised.

[6]Wis. Const., art. I, sec. 13, in totality, reads as follows: "The property of no person shall be taken for public use without just compensation therefor."

by the state. Section 32.10, Stats.[7] "allows a landowner, who believes that his or her property has been taken by the government without instituting formal condemnation proceedings, to commence an action to recover just compensation for the taking," hence, an inverse condemnation. *Zinn v. State,* 112 Wis. 2d 417, 432–33, 334 N.W.2d 67, 74–75 (1983). Section 32.10, though argued on appeal, is not applicable to the facts of this case. Section 84.25, Stats., also does not apply to this case because the City never argued at trial or on appeal that Pennsylvania Avenue was designated or intended to be designated a "controlled access highway."

---

[7]Section 32.10, Stats., provides:

**32.10 Condemnation proceedings instituted by property owner.** If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted. A copy of the petition shall be served upon the person who has occupied petitioner's land, or interest in land. The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the occupying person as defendant. The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this subchapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied.

The trial court ruled that there was a taking, pursuant to sec. 32.09(6)(b), Stats. The court's judgment awarded the Sippels $33,200 for loss of access in reliance upon *Narloch v. D.O.T.*, 115 Wis. 2d 419, 340 N.W.2d 542 (1983). The trial court reasoned that the rule of law set forth in *Narloch* is applicable to this case. *Narloch* states that "the state may deprive or restrict access without compensation pursuant to a 'duly authorized exercise of police power.' [However,] when a partial taking occurs, the loss of an existing right of access is an item of loss or damage to the remaining property that is compensable." *Id.* at 430–31, 340 N.W.2d at 548. Nevertheless, the facts in *Narloch* are distinguishable from those of this case.

In *Narloch,* the Department of Transportation condemned three separate properties by use of police power for the relocation of a highway. The court found that the three plaintiffs' access to the highway was restricted as a result of the partial taking. *Id.* at 432, 340 N.W.2d at 549.[8] In the present case, there is no condemnation of property and no taking of a fee interest by use of police power. *Narloch* is therefore inapplicable to the present case.

Section 32.09(6)(b) most closely relates to the present case, yet it is also inapplicable. It is not clear that a "partial taking," as required for the applicability of this

---

[8]The following is the essence of the *Narloch* opinion concerning access:

> "[E]xisting right of access" in sec. 32.09(6)(b), Stats., includes the right of an abutting property owner to ingress and egress [from his property to a public road], and the right to be judged on the criteria for granting permits for access points under sec. 86.07(2) and Wis. Admin. Code ch. Hy 31.

*Narloch,* 115 Wis. 2d at 432, 340 N.W.2d at 549.

statute, is synonymous with a "constructive taking." In addition, it is not clear that the Sippels' "deprivation or restriction of existing right of access" to Pennsylvania Avenue was the result of a "duly authorized exercise of the police power" as required under the statute.[9] Regardless of whether or not police power was used in this case, we determine that a partial taking is not synonymous with a constructive taking and therefore sec. 32.09(6)(b) is inapplicable to the facts.

A review of the cases cited by the City and the Sippels in their appellate briefs, as well as supplemental research, does not reveal a Wisconsin case that mirrors the facts before us. We will therefore rely on the general legal principles set forth in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978); *Howell Plaza, Inc. v. State Highway Comm'n,* 92 Wis. 2d 74, 284 N.W.2d 887 (1979); *More-Way North Corp. v. State Highway Comm'n,* 44 Wis. 2d 165, 170 N.W.2d 749 (1969); and *Buhler v. Racine County,* 33 Wis. 2d 137, 146 N.W.2d 403 (1966).

It is well settled law in this state that a claim for just compensation must be supported by a taking of property. *Howell Plaza, Inc.,* 92 Wis. 2d at 80, 284 N.W.2d at 889. "[I]ncidental damages to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made." *Id.* at 80, 284 N.W.2d at 890 (citations omitted). "[M]ere consequential damage to property resulting from governmental action is not a taking thereof. Sec. 13, art. I, Wis. Const., like its equivalent in the federal constitution, 'does not undertake, . . . to socialize all losses, but those

---

[9] *See supra* note 4 for relevant statute text.

only which result from a taking of property.' *United States v. Willow River Co.*, 324 U.S. 499, 502, 65 Sup. Ct. 761, 89 L. Ed. 1101 [(1944)]." *Id.* at 80-81, 284 N.W.2d at 890 (quoting *Wisconsin Power & Light Co. v. Columbia County,* 3 Wis. 2d 1, 6, 87 N.W.2d 279, 281 (1958)).

The United States Supreme Court focuses on the character of the government interference with property rights in a taking determination as well as the nature and extent of the interference with the interests in the parcel as a whole. *Penn Central Transp. Co.,* 438 U.S. at 130-31. Our own supreme court recognizes a compensable taking when a "property owner has been deprived of 'all, or substantially all, of the beneficial use of [his] property.' " *Howell Plaza, Inc.,* 92 Wis. 2d at 81, 284 N.W.2d at 890 (citation omitted). In light of these cases, the facts in this case do not support the Sippels' claim that they have been denied "substantially all beneficial use" of their property. The loss of twenty parking spaces on Pennsylvania Avenue is uncontroverted. It is also a fact that those parking spaces extended onto the City's right of way. The Sippels lost access to their portion of the parking spaces does not constitute a lost fee interest in their property. " '[J]ust compensation' has never been construed as requiring payment for all injuries imposed upon persons or property by acts of government." *More-Way,* 44 Wis. 2d at 169, 170 N.W.2d at 751. In short, we decline the Sippels' invitation to compensate them for the loss of their free use of City property.

The restriction of access to parking with no taking in fee does not rise to a compensable taking. *See More-Way,* 44 Wis. 2d at 170-75, 170 N.W.2d at 751-54. Because we determine that there was no taking of property, the judgment awarding $33,200 plus all interest, fees, and costs is reversed. We need not further address

the interest rate issue raised by the City. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

## THE SIPPELS' CROSS-APPEAL

Special assessments were computed and levied against the Sippels' complex on a "per-foot" basis pursuant to the City's police power. The Sippels contend that the jury's finding that there were special benefits conferred upon their property as a result of the improvements to Whitnall and Pennsylvania Avenues is not supported by credible evidence. In the alternative, if special benefits resulted, they argue that any special benefits are outweighed by the decline in value to their property. In addition, the Sippels' assert that the jury instruction defining "special benefits" was incomplete and the court's decision to exclude certain "declination in value" evidence in the special assessment equation from the jury was unduly prejudicial. The City relies upon *In re Installation of Storm Sewers,* 79 Wis. 2d 279, 255 N.W.2d 521 (1977), *reh'g denied,* in arguing that special assessments against the Sippels were reasonable and made pursuant to their police power.

The legislature has established guidelines for special assessment amounts in instances where municipalities justify assessments through police power and non-police power authority. Section 66.60(1)(a) and (b), Stats., provides that any municipality may levy and collect special assessments for "special benefits" conferred from municipal work or improvements. The assessment shall not exceed the value of benefits conferred when non-police power authority is used as the basis for the assessment. However, when police power is used, the assessment

539

amount shall be upon a "reasonable basis."[10]

On appeal, the Sippels and the City agree that the City used its police power to levy a special assessment on the Sippels' property. Therefore, at issue is whether the basis upon which the City determined the assessment amount is reasonable. We need not address the issue of whether special benefits to the Sippels' property are outweighed by the decline in the value of their property because sec. 66.60(1)(b), Stats. renders this issue irrelevant.[11]

When the assessment amount is determined by use of police power, the municipality is not required to show that property is benefitted to the full extent of the dollar amount assessed. *Gelhaus & Brost, Inc. v. City of Medford*, 144 Wis. 2d 48, 50, 423 N.W.2d 180, 182 (Ct. App. 1988), *review denied.* However, the statute requires that the assessment basis be "reasonable." In addition, "our supreme court has stated that the municipality's adopted plan or method for assessment must be 'fair and equitable and such that it will bring about an assessment in proportion to the benefits accruing.' " *Id.* at 52, 423

---

[10]Sections 66.60(1)(a) and (b), Stats., state in relevant part:

**66.60  Special assessments and charges. (1)(a)** . . . any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon such property by any municipal work or improvement; . . ..

(b)  The amount assessed against any property for any work or improvement which does not represent an exercise of the police power shall not exceed the value of the benefits accruing to the property therefrom, and for those representing an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

[11]Section 66.60(1)(b), Stats., and its provision to reduce the special assessment amount, is only applicable when non-police powers are used to levy a special assessment.

N.W.2d at 182 (quoting *In re Installation of Storm Sewers: Berkvam v. City of Glendale,* 79 Wis. 2d 279, 287, 253 N.W.2d 521, 525 (1977) (citation omitted)).

[11]

We determine that the assessment basis used by the City, in light of the methods considered in *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 372–74, 453 N.W.2d 177, 181 (Ct. App. 1990), was proper and reasonable. The City's assessment is based on the "front-foot" method, a widely-accepted and commonly-used method of assessment. The Sippels argue that *Peterson* supports their position that the "front-foot" method is unreasonable. However, *Peterson* is distinguishable on its facts. *Peterson* involved a special assessment of pie-shaped properties with different lot frontages. The various geometrical shapes in *Peterson* caused substantial assessment variations for the same or similar services by use of the "front footage" method. This obvious injustice is not the case in this instance. The properties in this case are generally rectangular or quadrilateral properties with comparable frontage. The method of assessment is reasonable because it is apportioned on an equitable basis among all affected property owners and does not grossly over-assess the Sippels for the proportional benefits conferred.

The court properly excluded evidence of the property's decline in value because it is the responsibility of the court to complete such a calculation only when non-police power is used in assessments against property as provided by sec. 66.60(1)(b), Stats. Since the City exercised its police power in its special assessment against the Sippel property, this mathematical calculation was unnecessary.

■ We are also not persuaded by the Sippels' argument that the trial court committed reversible error by not defining "special benefits" for the jury. We acknowledge that such an instruction would have been helpful to the jury in their deliberations, but it was not necessary to ensure a just verdict. The jury in this case presumably defined "special benefits" colloquially as did the court in *Goodger v. City of Delavan,* 134 Wis. 2d 348, 396 N.W.2d 778 (Ct. App. 1986). Since "special benefits" is not statutorily defined, the *Goodger* court relied upon Webster's Third New International Dictionary (1976) in defining "special benefits" as an "uncommon advantage." *Id.* at 352, 396 N.W.2d at 780.

■ There is credible evidence to support the jury's verdict that special benefits were conferred to the Sippels' property as a result of the street improvements. The evidence demonstrates that the Sippels received improved drainage which prevented precipitation ponding, improved appearance and safety, and improved flow of traffic, all as a result of the increased width of the road and installation of curbs and gutters. The fruits of these street improvements are particularized to the Sippel property. Therefore, the uncommon advantage to the Sippels' property as a result of the improvements is immediately adjacent to their Pennsylvania Avenue footage and does not directly benefit properties bordering the Sippels' property.

We determine that the assessment was based on the City's police power and the method of assessment was appropriate and reasonable. The jury was sufficiently instructed; failure to define special benefits for the jury was not an abuse of discretion. Moreover, the jury verdict was based on ample credible evidence. Further, the

trial court's exclusion from the jury evidence of property value diminution was proper and not an abuse of discretion. The special benefits conferred to the Sippels' property need not be compared to the special assessment amount because the statute requires such a comparison only when non-police power is used as the basis for the assessment. Accordingly, we do not order a new trial in the interest of justice as no error occurred. *See* sec. 805.15(5), Stats. A remand for a determination on attorney fees is appropriate only if the Sippels had prevailed on appeal. *See* sec. 32.28, Stats. (condemnor payment of condemnee's litigation expenses is permissible when condemnee prevails).

*By the Court*—The judgment dated August 30, 1990, from which the City appealed, is reversed. The judgment dated October 5, 1990, from which the Sippels cross-appealed, is affirmed.