LAC LA BELLE GOLF CLUB, Plaintiff-Respondent,

v.

VILLAGE OF LAC LA BELLE, Defendant-Appellant.†

Court of Appeals

No. 93–1651. Submitted on briefs April 12, 1994.—Decided August 31, 1994.

(Also reported in 522 N.W.2d 277.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Hector de la Mora*, and *Steven J. Vatndal* of *de la Mora & de la Mora* of Elm Grove.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark X. Herro* of *Herro, Chapman & Herro* of Oconomowoc.

Before Anderson, P.J., Nettesheim and Gartzke, JJ.

NETTESHEIM, J.   The circuit court ruled that a portion of the Village of Lac La Belle's special assessment against Lac La Belle Golf Club was not made on a reasonable basis. As a result, the court reduced the special assessment. The Village appeals. We affirm the

trial court's ruling and the resulting judgment and order.

## FACTS AND TRIAL COURT PROCEEDINGS

The historical facts are not disputed. Lac La Belle Golf Club is an incorporated private country club which operates a golf course, a clubhouse and related facilities for its members. A portion of the golf course property lies within the Village of Lac La Belle.

On May 9, 1988, pursuant to its police powers, the Village levied special assessments against various properties in the Village to finance the construction costs for a sanitary sewer collection system. The Village selected an assessment method based on a "Residential Equivalent Unit" (REU). The Village defined an REU as a parcel that: (1) accommodated, or could accommodate, a single family house; (2) had gravity access to the new system; and (3) had access to the public road along which the system was installed. Each REU was assessed $6900.

Two portions of the club's property were affected by the sewer project: one parcel adjoined Lac La Belle Drive and the other parcel abutted Pennsylvania Avenue. Based on the REU criteria, the Village theorized that two residential lots could be created out of the parcel adjoining Lac La Belle Drive and that ten residential lots could be created from the parcel adjoining Pennsylvania Avenue. This produced a total assessment to the club of $82,800.

The parcel adjoining Lac La Belle Drive was not part of the golf course proper, and the club did not challenge the Village's special assessment for the two theoretical lots created from this parcel. However, the other parcel adjoining Pennsylvania Avenue constitutes the entire fourteenth hole of the golf course plus

278

some additional golf course terrain. The club contested the Village's assessment based on the ten theoretical lots created out of this parcel. Although the club raised a variety of issues at the trial court level, the only issue on appeal is whether the Village's assessment as to this parcel was made on a reasonable basis.

The trial court ruled that the assessment was not made on a reasonable basis because the costs of realizing the benefit were out of proportion to the benefits accruing. The court's decision was based on the economic consequences to the club of: (1) abandoning the fourteenth hole and subdividing it into the ten lots, (2) selling the lots, and (3) acquiring and developing new lands to replace the fourteenth hole or reconfiguring the golf course within the club's remaining existing boundaries. The court determined that such an undertaking was not economically feasible because the costs would be out of proportion to the benefit conferred. Thus, the court concluded that the assessment was unreasonable.

Based on this conclusion, the trial court reduced the special assessment against the club to the amount levied for the two unchallenged lots adjoining Lac La Belle Drive. The Village appeals. We will recite more details of the trial court's decision as we address the appellate issues.

## FOCUSING THE APPELLATE ISSUES

We begin with some observations which will serve to focus the club's judicial challenge to the Village's special assessment in the trial court and the Village's challenge on appeal. First, the club did not dispute the Village's use of the REU assessment method which divided the club's fourteenth hole into ten theoretical lots. Second, the club did not dispute that these theo-

retical lots would be benefitted by the sewer collection system. Third, although the argument perhaps could have been made, the club did not argue that the installation of the sewer collection system did not confer a benefit which is "substantial, certain and capable of being realized within a reasonable time." *Wolff v. Town Bd. of Weston*, 156 Wis. 2d 588, 598, 457 N.W.2d 510, 514 (Ct. App. 1990).[1] Instead, the club argued that the economic consequences of reaping the benefit of the assessment were wholly out of proportion to the value of any benefit conferred. As noted, the trial court agreed.

The Village appeals, raising a number of issues. First, the Village contends that the club's concession of benefit regarding the two unchallenged lots abutting Lac La Belle Drive bars any inquiry into the reasonableness of the assessment regarding the ten theoretical lots constituting the fourteenth hole. Second, the Village argues that the club's concession of benefit to the ten theoretical lots if the fourteenth hole were subdivided bars any inquiry into the profitability of such a venture. Third, the Village contends that the evidence does not sustain the trial court's conclusion that the assessment was not in proportion to the benefits accruing.

### BURDENS, TESTS AND STANDARDS ON JUDICIAL REVIEW

We begin by noting the well-recognized principles which apply to judicial review of a police power special

---

[1] We make this statement because no evidence suggests that the club ever intends to actually develop the fourteenth hole and sell the lots.

assessment. The law presumes that the municipality proceeded reasonably in making the assessment, and the challenger bears the burden of going forward. *Peterson v. City of New Berlin*, 154 Wis. 2d 365, 371, 453 N.W.2d 177, 180 (Ct. App. 1990). The police power of a municipality is broad and, in general, the courts may intercede only when the exercise of that power is clearly unreasonable. *CIT Group/Equip. Fin., Inc. v. Village of Germantown*, 163 Wis. 2d 426, 433, 471 N.W.2d 610, 613 (Ct. App. 1991), *cert. denied*, 503 U.S.—, 112 S. Ct. 1182 (1992). Once the challenger establishes a prima facie case, the burden shifts to the municipality to show that the chosen assessment method comported with the statutory requirement that it be reasonable. *Peterson*, 154 Wis. 2d at 371, 453 N.W.2d at 180.

A municipality has the power to make special assessments based upon the exercise of its police power. Section 66.60(1)(b), STATS.; *Peterson*, 154 Wis. 2d at 370, 453 N.W.2d at 180. However, this power is not unfettered. Two additional legislatively mandated requirements apply: the property must be benefitted and the assessment must be made upon a reasonable basis. Section 66.60(1)(b); *Peterson*, 154 Wis. 2d at 371, 453 N.W.2d at 180.

As to our appellate standard of review, we note that § 66.60(1)(b), STATS., requires special assessments made under a municipality's police power to be made upon a "reasonable basis." Whether an assessment fulfills the legal standard of reasonableness is a question of law which we review de novo. *CIT Group*, 163 Wis. 2d at 433-34, 471 N.W.2d at 613. However, we review any factual determinations made by the trial court in

the course of reaching its reasonableness determination under the clearly erroneous standard. Section 805.17(2), STATS.; *Peterson*, 154 Wis. 2d at 370, 453 N.W.2d at 180.

## ANALYSIS

### 1. Introduction

██

As noted, a special assessment levied under the police power must satisfy two requirements: (1) the subject property must be benefitted, and (2) the assessment must be made on a reasonable basis. Section 66.60(1)(b), STATS.; *Peterson*, 154 Wis. 2d at 371, 453 N.W.2d at 180. The club does not dispute that a benefit is conferred to the theoretical lots if the fourteenth hole were developed into actual saleable parcels. Rather, the club contends that the costs of reaping such a benefit are wholly out of proportion to the benefit accruing. Thus, the club contests the reasonableness of the special assessment.

### 2. Consequences of Benefit to the Two Unchallenged Lots

As noted, the club does not dispute the benefit to the two lots abutting Lac La Belle Drive which, although owned by the club, are not part of the golf course proper. Based upon this concession, the Village contends on a threshold basis that the club is precluded from challenging the reasonableness of the assessment against the ten theoretical lots constituting the fourteenth hole. The Village argues that "[t]here is no legal support for [the club's] contention that the Court should divide a single parcel into multiple parts when determining the existence of special benefit." The Vil-

lage also argues that "[the club's] position would lead to absurd results in which a property owner would be invited to creatively and hypothetically carve up that owner's single parcel so as to be able to challenge a special assessment by asserting that some corner of the parcel is not specially benefitted."

In making this argument, the Village overlooks that *it, not the golf club or the trial court*, divided the property into the theoretical lots and then levied a "per unit" assessment based on the resulting benefit to each parcel. We think it illogical, inconsistent and unfair for the Village to assess a property owner on a "per unit/benefit" basis and then argue on judicial review that the property owner may not challenge the reasonableness of the result produced by that very assessment method.

As the court of appeals in *Peterson* observed, not only must the exercise of the police power be reasonable, but the *result* of that exercise must be reasonable as well. *Peterson*, 154 Wis. 2d at 371, 453 N.W.2d at 180. We conclude that the club's concession of benefit as to the two undisputed lots does not preclude its challenge to the other ten theoretical lots constituting the fourteenth hole.

### 3. Reasonableness Under the Police Power: The Scope of the Inquiry

As noted, the club does not dispute that the ten theoretical lots constituting the fourteenth hole are benefitted by the installation of the sewer collection system if the fourteenth hole should be developed into residential lots. This concession, the Village argues, concludes the reasonableness inquiry because under the police power the amount of the assessment may

exceed the value of the benefit. Section 66.60(1)(b), STATS. Thus, the Village argues that the trial court erred by further inquiring whether such a venture would be economically profitable for the club to undertake.

We disagree with the Village that benefit alone satisfies the law. We begin with the statute. Section 66.60(1)(b), STATS., provides:

> The amount assessed against any property for any work or improvement which does not represent an exercise of the police power shall not exceed the value of the benefits accruing to the property therefrom, and for those representing an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

On the face of the statute, the crucial distinction between a taxing power special assessment and a police power special assessment is that a taxing power special assessment may not exceed the value of the benefits, while a police power special assessment may exceed such value *so long as it is made on a reasonable basis.*

The club's concession that the ten theoretical lots are benefitted obviously satisfies the benefit component of a police power special assessment. The Village argues that this concession also satisfies the reasonableness requirement. We disagree because both the statute and the case law treat benefit and reasonableness as two separate requirements. "[W]hen levying special assessments under the police power, there are two additional legislatively mandated requirements: that the property be benefited *and* that the assessment be made upon a reasonable basis." *Peterson,* 154 Wis.

2d at 371, 453 N.W.2d at 180 (emphasis added). A reasonableness challenge inquires whether the assessment is "in proportion to the benefits accruing" or is reasonable in its result. *Id.* A reviewing court cannot meaningfully answer these questions if the inquiry is limited to merely whether a benefit has been conferred. Rather, the degree, effect and consequences of the benefit must also be examined so that its reasonableness can be measured.

This case prominently demonstrates why a reasonableness inquiry is necessary and fair. Here, if the club were to develop and sell the lots which presently constitute the fourteenth hole and thereby reap the benefits which the Village claims, the club would be left with a seventeen-hole golf course. Besides reason and logic, the evidence in this case establishes that a private country club which offers such a golfing anomaly cannot expect to retain its existing members or attract new members. Thus, the club's alternatives to replacing the lost fourteenth hole would be either to purchase additional lands or to reconfigure the golf course within the existing remaining boundaries. As our later discussion about the evidence will reveal, these options carried significant adverse financial consequences to the club. However, we first address two preliminary matters.

We recognize that the Village's assessment method in this case produces a uniform and equal amount assessed against each affected unit. To this extent, reasonableness is satisfied because inherent in the requirement of reasonableness is that an assessment must be apportioned fairly and equitably among the property owners. *See Gelhaus & Brost, Inc. v. City of Medford*, 144 Wis. 2d 48, 52, 423 N.W.2d 180, 182 (Ct. App. 1988); *see also Peterson*, 154 Wis. 2d at 373,

453 N.W.2d at 181. Thus, uniformity may answer a reasonableness challenge in the usual special assessment case where the focus of the challenger's complaint is that the subject property is called upon to bear an inordinate share of the assessment in comparison to other properties similarly situated.

But mere uniformity does not answer a reasonableness challenge in a case such as this where the challenger claims that the result of the assessment is unfair because the cost of reaping the benefit is wholly out of proportion to the benefits accruing. This type of challenge rests on the *uniqueness, not the similarity,* of the subject property to the other affected properties.[2]

The Village also cites to the law of *Gelhaus* and *Sippel v. City of St. Francis,* 164 Wis. 2d 527, 476 N.W.2d 579 (Ct. App. 1991), which hold that the effect of the assessment on the value of the property is irrelevant to a reasonableness inquiry. *See id.* at 540, 476

---

[2] The uniqueness of a golf course property as compared to other affected properties formed the basis, in part, for two decisions from other jurisdictions cited in the trial court's decision. In *Southview Country Club v. City of Inver Grove Heights,* 263 N.W.2d 385 (Minn. 1978), the Minnesota Supreme Court held that the question of benefit to a golf course is measured by the effect of the assessment on the entire tract, not just the portion of the tract immediately benefited. *Id.* at 388. As the trial court noted, *Southview* is not a police power case.

In *City of Waukegan v. Drobnick,* 209 N.E.2d 24 (Ill. App. Ct. 1965), the challenging property owner argued that the municipality had improperly failed to include a golf course in a special assessment. The Illinois Court of Appeals disagreed, holding that the failure to specially assess the golf course was proper because "there was no testimony that the highest and best use of the country club property was for some use other than for a golf course." *Id.* at 28. It does not appear from the decision that *Drobnick* was a police power case.

N.W.2d at 585; *Gelhaus*, 144 Wis. 2d at 51, 423 N.W.2d at 181-82. However, the club does not argue that the value of its lands are adversely affected by the special assessment. Rather, the club argues, unlike the claims in *Gelhaus* and *Sippel*, that the assessment is unreasonable because the economic consequences of purchasing and developing new lands to replace the fourteenth hole or reconfiguring the course within its existing boundaries are wholly out of proportion to the benefits accruing. In short, *Gelhaus* and *Sippel* do not apply to the situation here.

We conclude that the trial court properly heard evidence as to the economic consequences to the club should it develop and sell the theoretical lots constituting the fourteenth hole. Our approval of this approach also disposes of the Village's related argument that the trial court could not look to the effect of such development on the golf course as a whole because it involved lands not directly assessed and beyond the territorial limits of the Village.

### 4. The Evidence

We now look to the trial court's evaluation of the evidence. The trial court concluded that any benefit to the club as a result of the sewer collection system was out of proportion to the costs of reaping such benefit. The court relied heavily on two of the club's expert witnesses: Kenneth Killian, a golf course architect, and John Jahnke, an engineering consultant. Their testimony rejected the Village's contention that the loss of the fourteenth hole could be reasonably accommodated by reconfiguring the golf course within its remaining boundaries or by acquiring and developing additional lands.

As to reconfiguration, Killian estimated the reconfiguration costs at $1,142,000 even after crediting the estimated profit from the sale of the lots. Moreover, Killian opined that such reconfiguration would leave the club with a substandard sized golf course.[3]

As to expanding into adjoining lands, Killian's testimony established a construction cost for a golf hole at approximately $150,000 to $175,000. The Village argues that the club's projected profits from the sale of the lots would more than offset this cost. However, the trial court noted that this argument, like the assessment process itself, overlooked additional important factors: (1) the acquisition costs for such lands, (2) the "down time" loss in revenues to the club for the approximate two years that the course would be closed while the new hole was constructed and groomed for play, and (3) likely environmental problems because the adjoining property is wetlands.

The Village's failure to address these factors figured prominently in the trial court's ruling. The court wrote:

> The parcel along Pennsylvania Avenue is an integral part of an eighteen hole golf course—a unique, specific use. No inquiry was made as to highest use. . ... No consideration was given to the interrelationship of the fourteenth hole parcel to the rest of the golf course to see if the impact outweighed the benefit. No inquiry was made to see if the golf course could replace the area lost by development along the fourteenth hole and no inquiry

---

[3] Other testimony established that the golf course was already an undersized eighteen-hole course, measuring out at 6000 plus yards, whereas a conventional eighteen-hole golf course measures out at 7000 plus yards.

was made as to how that cost would stack up to the benefits derived from the development.

The evidence adopted by the trial court established that the alternatives of expansion or reconfiguration were neither feasible nor prudent from an economic standpoint. Even if the lots were developed and sold, the evidence established that the highest and best use for the entire parcel remained a golf course. Even allowing that the theoretical lots are benefitted by the installation of the sewer collection system, the evidence established that the club has no economic incentive to actually reap the benefit because of the substantial costs involved in replacing the fourteenth hole. The evidence shows that such an undertaking would be economic folly.

Understandably, the Village cites to other evidence, or other inferences from the evidence, which it contends supports a contrary conclusion. However, the weight of the evidence and the credibility of the witnesses are matters peculiarly within the province of the trial court acting as the trier of fact. *Wolff*, 156 Wis. 2d at 598, 457 N.W.2d at 513-14. We see nothing in the trial court's factual findings which is clearly erroneous. *See* § 805.17(2), STATS.

■■■

Given the evidence adopted by the trial court, we affirm the court's legal conclusion that the Village's assessment against the club was not made on a reasonable basis because it produced an assessment not in proportion to the benefits accruing.

*By the Court.*—Judgment and order affirmed.