Daniel STEINBACH, Cynthia Steinbach, Chuck Rhein, Mary Rhein, Hugh Zwieg, Pamela Zwieg, Steve Kennedy, Karen Kennedy, Linus Schoepp, Donna Schoepp, Bob Van Metre, Barbara Van Metre, Jack Johnson, Beth Johnson, Leonard M. Teifeld, Anna Styka-Teifeld, Steve Swokowski, Julie Olson, Stout Krug Krug & Ryan, Gary Flatland, Peggy Flatland, John Waggoner, Karen Waggoner, William Bohnen, Linda Bohnen, Robert Connolly, Lynn Connolly, Bob Drisner, Ellen Drisner, John Tennyck, Art Krug, Dewi Krug, Carol Tennyck, Alan Ruud, and Susan Ruud, Petitioners-Respondents,†

v.

GREEN LAKE SANITARY DISTRICT, Respondent-Appellant.

Court of Appeals

*No. 03–2245. Oral argument July 1, 2004.—Decided September 15, 2004.*

2004 WI App 192

(Also reported in 688 N.W.2d 740.)

† Petition to review granted 1-11-2005.

640

On behalf of the respondent-appellant, the cause was submitted on the briefs of *William P. O'Connor, Tracy K. Kuczenski*, and *Mary Beth Peranteau* of *Wheeler, Van Sickle & Anderson, S.C.*, Madison. There was oral argument by *William P. O'Connor*.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Kent A. Tess-Mattner* of *Schmidt Rupke Tess-Mattner & Fox, S.C.*, Brookfield, and *Steven R. Sorenson* of *Sorenson Koenig Law Office*, Ripon. There was oral argument by *Kent A. Tess-Mattner*.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. The Green Lake Sanitary District (the District) appeals from a judgment and an order reducing the availability assessment levied against the respondents, individual owners of Sunrise Point Resort and Yacht Club Condominiums (Sunrise Point). We conclude that the District's exercise of its police powers was not clearly unreasonable. We reverse the judgment and order of the circuit court and reinstate the original assessments levied by the District.

## FACTS

¶ 2. The District operates a wastewater treatment plant and a sanitary sewer collection system. The treatment works and initial sewer collection lines were constructed in the early 1990s and since then the system has been extended several times. The construction and expansion of the District's sewer collection system were financed by special assessments on property served by the system.

¶ 3. The District's board of commissioners had considered extending the sewer system along the south shore of Green Lake after reviewing petitions from land owners and various preliminary engineering and feasibility studies. On June 20, 2000, the commissioners adopted a preliminary resolution declaring their intention to exercise special assessment powers to extend sanitary sewer service to serve additional lands within the District, including Sunrise Point and approximately 198 other properties. Sunrise Point is an eighteen-unit condominium structure in Green Lake.

¶ 4. In July 2001, the District received a signed Petition for Removal of Lot from Green Lake Sanitary District Sewer Expansion from each of the Sunrise Point condominium unit owners.

¶ 5. Pursuant to the preliminary resolution, the District's administrator and consulting engineers prepared a Special Assessment Report under WIS. STAT. § 66.0703(5) (2001–02),[1] which included the plans and specifications for the proposed sewer extension (to include Sunrise Point), an estimate of the project costs, and a schedule of assessments against the properties to be served by the planned sewer improvements. In November 2001, the District conducted a public hearing under § 66.0703(7) where interested persons were provided with an opportunity to be heard concerning the matters contained in the Special Assessment Report. Sunrise Point's counsel and several representatives of Sunrise Point testified at the public hearing. The improvements were constructed during the first several months of 2002 and were completed on July 30, 2002.

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 6. The commissioners allocated the special assessments to the benefited properties in accordance with the District's Final Resolution 2001–03, which was adopted December 8, 2001. Pursuant to its assessment policy, the District levied a base assessment (availability) on each buildable lot to which sanitary sewer service is made available by the sewer extension. The amount of the availability assessment was $4730.

¶ 7. Additionally, a connection assessment was levied on each structure actually connected to the sewer system. Under the District's special assessment policy, the amount of the connection assessment is based on the projected volume of wastewater flow from the property and varies with the use of the property. Single-family residences were assessed a connection assessment of $5930. The District assessed each condominium unit as it would a single-family home.

¶ 8. The special assessment levied against each of Sunrise Point's condominium units was comprised of both the availability assessment and the single-family home connection assessment.

¶ 9. In March 2002, Sunrise Point filed its petition for circuit court review of the District's determination to levy special assessments pursuant to WIS. STAT. § 66.0703(12)(a). The petition alleged that the special assessment levied against the condominium units was unfair, arbitrary and capricious, and that the methodology employed by the District violated § 66.0703 as well as the District's assessment policy.

¶ 10. In accordance with WIS. STAT. § 66.0703(12)(a), the District filed a Statement of Proceedings, including a comprehensive record of the District's actions on the special assessments. The parties submitted a Stipulated Statement of Facts in November 2002.

¶ 11. On February 5, 2003, following a telephone status conference, the circuit court ordered that Sunrise Point could file a supplemental pleading for certiorari review of the District's determination to extend sanitary sewer service to include Sunrise Point. Subsequently, Sunrise Point advised the circuit court and the District that it had elected not to pursue certiorari review and that it was abandoning that portion of its claim. Accordingly, by an order dated March 10, 2003, the circuit court dismissed Sunrise Point's claims relating to the inclusion of its condominium property within the sewer expansion. The amount of the assessment remained in dispute.

¶ 12. After briefing and oral argument, the circuit court determined that a portion of the special assessment levied against the condominium units (the availability component) was "incorrect." The court issued a judgment and order directing the District to reduce the availability assessment on each of Sunrise Point's condominium units to one-eighteenth of the original availability assessment, from $4730 to $263. The connection assessment amount was not modified. The judgment and order also gave Sunrise Point owners the right to request a hearing before the commissioners on the petitions through which they sought to remove their condominium units from the sewer extension area. The District appeals.

## DISCUSSION

¶ 13. The District argues that its special assessment represented an exercise of its police power and must be affirmed if it is reasonable. Whether a special assessment is reasonable is a question of law which we review de novo. *Lac La Belle Golf Club v. Village of Lac*

*La Belle*, 187 Wis. 2d 274, 281, 522 N.W.2d 277 (Ct. App. 1994). However, we review any factual determinations made by the trial court in reaching its reasonableness determination under the clearly erroneous standard. *Id.* at 281–82.

¶ 14. The law presumes that the District proceeded reasonably in levying the assessment, and the challenger bears the burden of going forward. *See id.* at 281. The police power of a municipality is broad, and generally "courts may intercede only when the exercise of that power is clearly unreasonable." *Id.* "The amount to be assessed against all property for the proposed work or improvement shall be apportioned among the individual parcels in the manner designated by the governing body." WIS. STAT. § 66.0703(2). Nonetheless, an assessment must pass three legislative requirements:

> First, the assessment must be levied upon property in a limited and determinable area. WIS. STAT. § [66.0703](1)(a). Second, it must be levied only for the special benefits conferred on the property. *Id.* Third, if an assessment represents an exercise of the police power, the assessment must have a reasonable basis as determined by the governing body of the city, town or village. WIS. STAT. § [66.0703](1)(b).

*Genrich v. City of Rice Lake*, 2003 WI App 255, ¶ 19, 268 Wis. 2d 233, 673 N.W.2d 361. The third requirement incorporates a dual analysis of uniformity and uniqueness. *Id.*, ¶ 20. "Uniformity requires the assessment to be fairly and equitably apportioned among property owners in comparable positions." *Id.*, ¶ 21. The "uniqueness" analysis recognizes that some unique circumstances may require a reduction in the special assessment. *Id.*, ¶ 22.

¶ 15. Here, Sunrise Point takes issue with the legislative requirement of reasonableness, and particularly the issue of uniformity. Sunrise Point also argues that the District ignored the condominium owners' petitions to be excluded from the sewer extension and thereby violated due process protections. We take each issue in turn.

*Reasonableness of the District's Special Assessment*

¶ 16. The District's authority to levy special assessments exists by right of statute under WIS. STAT. § 66.0703, which states in relevant part:

> [A]ny city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments.

Sec. 66.0703(1)(a). If, as here, a special assessment is levied pursuant to an entity's police power, "the assessment shall be upon a reasonable basis as determined by the governing body . . . ." *See* § 66.0703(1)(b). There is no single formula or per se reasonable method for apportioning assessments; instead, the facts of the particular situation govern the determination of whether the assessment is made upon a reasonable basis. *Peterson v. City of New Berlin*, 154 Wis. 2d 365, 374, 453 N.W.2d 177 (Ct. App. 1990). A special assessment "may include the direct and indirect cost, the resulting damages, the interest on bonds or notes issued in anticipation of the collection of the assess-

ments, a reasonable charge for the services of the administrative staff" and other expenses attributable to the proposed work or improvements. Sec. 66.0703(2).

¶ 17. The special assessment levied by the District consisted of two components: (1) the availability assessment of $4730, and (2) the connection assessment of $5930.[2] Pursuant to the District's Resolution 97–02, an availability assessment is levied "upon each lot, regardless of size, accessibility by public or private road or easement, corner location or other characteristics" to which sewer service is made available. Resolution 97–02 defines a "lot" as:

> [A] lot of record or a parcel of record as recorded at the office of the Green Lake County Register of Deeds which is listed as a separate tax key parcel by the Green Lake County Tax Listing Office or which is not listed as a separate tax key parcel but which is taxed as a part of one or more lots whose ownership includes an interest in the unlisted lot.

¶ 18. Sunrise Point argues that the condominium property as a whole should have been assessed as a single lot. The District responds that its availability assessment was fairly and uniformly levied against all single-family residential property owners of record. The parties' arguments hinge on the definition of a "lot" in Resolution 97–02. Sunrise Point stresses that the condominium owners' land, in the aggregate, is recorded with the Green Lake County Register of Deeds as "Lot

[2] The connection assessment is levied "on each lot which includes any habitable building or accessory connection to the sanitary sewer system." It reflects the estimated volume of wastewater flow to the sewer system. Sunrise Point does not dispute the connection portion of the special assessment levied against each individual condominium unit.

1 of Certified Survey Map No. 1401." The argument follows, therefore, that Sunrise Point condominiums should be assessed "only a single availability assessment against the lot" because the recorded instrument refers to the entire premises as Lot 1. Sunrise Point posits that the method employed by the District to assess the Southshore Terrace mobile home park should have been used to assess the condominiums. There, the District levied a single availability assessment against Southshore Terrace as a whole, even though Southshore Terrace comprised fifty-five mobile home sites.[3]

¶ 19. The circuit court agreed with Sunrise Point, ruling that the mobile home park was comparable to the condominium property, and therefore the availability assessment should have been applied consistently to both. Relying on *Peterson*, the circuit court held that the availability assessment levied against Sunrise Point was incorrect. In *Peterson*, the city extended sewer and water service to a residential subdivision in which the lots were of comparable size but, due to varied shapes along winding roads, the lots had significantly different street frontages. *Peterson*, 154 Wis. 2d at 368. The city assessed the lots based on front footage. *Id.* at 369. The Petersons owned a lot with a comparatively large street frontage and challenged the assessment methodology, arguing that the city should have employed a unitary or

[3] Sunrise Point refers to Southshore Terrace as a fifty-five unit mobile home park. We cannot find this description of Southshore Terrace in the record; however, a preliminary engineering report refers to a fifty-five unit mobile home park called Reich Mobile Home Park in Area 7 of the Green Lake Sanitary District. Because the name is not critical to our analysis, we refer to the mobile home property as Southshore Terrace.

lump sum methodology. *Id.* at 368–69. On appeal, we held that an assessment is unreasonable if the chosen assessment method (1) has an "entirely disproportionate distribution" (2) on a group of property owners, (3) which can be easily avoided by the municipality's use of another assessment methodology. *Id.* at 373.

¶ 20. The District argues that a condominium unit is a distinct parcel of record and, as such, each unit is subject to an individual assessment under the definition of a lot in Resolution 97–02. It contends that there was no disproportionate effect on Sunrise Point because its assessment methodology "properly treats condominium units the same as other parcels, whether held as platted lots or other listed tax parcels." Further, the District argues that the circuit court's analogy between Sunrise Point condominium units and a mobile home park is incorrect. Finally, the District states that any alleged disproportionate effect would not be easily avoided by the use of another assessment methodology.

¶ 21. We agree with the District. Here, the circuit court ruled that "South Shore Homeowners Association [the mobile home park] is a condominium in a de facto sense, you have people receiving identical services under essentially identical circumstances. The only thing that makes it different is the legal status under which it exists." This is incorrect. The mobile home park, regardless of the number of trailer units, is a single parcel of record that provides sites for mobile home trailers. In contrast, condominium units created by the recording of the condominium declaration and plat become individual parcels of record. The character of condominium ownership is set forth by statute:

> Every unit and its percentage of undivided interest in the common elements shall be deemed to be a parcel and shall be subject to separate assessments and taxa-

tion by each assessing unit and special district for all types of taxes authorized by law including, but not limited to, special levies based on the value of property and special assessments. Neither the building, the property nor any of the common elements shall be deemed to be a parcel separate from the unit.

WIS. STAT. § 703.21(1). Unlike mobile home units, condominium units constitute real property. WIS. STAT. § 703.04. For purposes of analysis, therefore, the residential condominium units are comparable to other single-family parcels of record.

¶ 22. We agree with the District's observation that:

> A property owner's election to subject property to the condominium form of ownership provides both advantages and disadvantages. By establishing independent real property interests, the condominium unit owner is secure from the risk that his [or her] property could be jeopardized by the failure of a co-owner to make timely tax or mortgage payments. But the election to establish separate tax parcels for each owner can also elevate the aggregate assessed value of a condominium and affect the determination and allocation of special assessments. These consequences flow from the nature of condominium ownership as that has been authorized by the Legislature.

¶ 23. We hold that the two-tiered lump sum assessment levied by the District against the Sunrise Point condominium owners was not clearly unreasonable and, therefore, does not warrant interference by the courts. *See Lac La Belle Golf Club*, 187 Wis. 2d at 281. The lump sum method of assessment has been recognized as an acceptable approach, and the District's assessment treated comparable properties uniformly, resulting in equal assessments for single-family resi-

dential real estate parcels in the District. *See Genrich*, 268 Wis. 2d 233, ¶ 21. The availability assessment levied against each individual condominium unit should be reinstated as originally assessed by the District.

*Due Process and Sunrise Point's Petition to be Excluded from the System*

¶ 24. On July 3, 2001, Sunrise Point condominium owners each filed a Petition for Removal of Lot from Green Lake Sanitary District Sewer Expansion. Sunrise Point contends that it was never provided a meaningful opportunity to present its objections to the District representatives. It further contends that it was denied due process as a result of the District's failure to consider the petitions.

¶ 25. The District responds that Sunrise Point waived its right to object to inclusion in the sewer expansion and had no legal standing to raise the issue in the first place.

¶ 26. We conclude that Sunrise Point was not deprived of its due process rights. The District levied the special assessment in accordance with its police powers and was not obligated to exclude Sunrise Point even if the owners so desired. *See State ex rel. Vanderbloemen v. Town of West Bend*, 188 Wis. 2d 458, 465, 525 N.W.2d 133 (Ct. App. 1994) (a property owner has no vested right to be excluded from a sanitary sewer system).

¶ 27. Furthermore, Sunrise Point was provided an opportunity to pursue certiorari review of the District's determination to include its condominium units in the sewer expansion. In a letter dated February 27, 2003, Sunrise Point expressly abandoned the issue

and notified the circuit court that it would not pursue certiorari review. Waiver, a voluntary and intentional relinquishment of a known right, is clearly demonstrated by the record. *See Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 681, 273 N.W.2d 279 (1979). For these reasons, Sunrise Point has not endured a violation of its due process rights.

## CONCLUSION

¶ 28.   We conclude that the two-tiered lump sum assessment methodology implemented pursuant to the District's policy was not clearly unreasonable. Furthermore, we conclude that the availability assessment levied against each individual condominium unit was consistent with the assessment levied against other single-family residential real estate parcels of record and produced uniform and equal assessment amounts for similarly situated property owners. We reverse the circuit court's recalculation of the availability assessment and reinstate the original assessment levied by the District.

¶ 29.   Sunrise Point has waived any right to raise due process claims, and we hold that it cannot now challenge the process by which the District determined to include Sunrise Point in the sewer expansion.

*By the Court.*—Judgment and order reversed.