THOMAS and wife, Respondents, v. CITY OF WAUKESHA, Appellant.

*February 5—March 5, 1963.*

For the appellant there were briefs and oral argument by *John P. Buckley,* city attorney, and *Robert F. Boden,* assistant city attorney.

For the respondents there was a brief by *A. Warren Cahill* and *Harry E. Fryatt, Jr.,* both of Waukesha, and oral argument by *Mr. Cahill.*

DIETERICH, J.   The action was tried and determined pursuant to the provisions of sec. 66.60 (12) (b), Stats.[1]

Arcadian avenue, the route of State Trunk Highway 59 through the city, was rebuilt in 1960, as a federal urban project in which the federal government paid 50 percent of the cost, the state 35 percent, and the city 15 percent.

Before the improvement, Arcadian avenue was a blacktop street, 34 feet wide (most of the city's older residential streets were 30 feet wide) with a high crown. That portion of the street with which this appeal is concerned was lined by mature elm and basswood trees. The original macadam pavement was constructed in 1903, and since then has been periodically resurfaced. There existed a certain number of defects in the street, curbs, gutters, and sidewalks, some of which

---

[1] Sec. 66.60 (12) (b). "Such appeal shall be tried and determined in the same manner as cases originally commenced in such court, . . ."

were caused by the roots of the large trees. The sidewalks ranged in age from two years to fifty years. The use of Arcadian avenue, both before and after the street improvement, was primarily residential. The residential use was 50 percent single-family, 33 percent two-family, and eight percent more than two-family residences.

Arcadian avenue was widened 14 feet to a 48-foot width, paved with concrete and constructed with a lower crown. New sidewalks, curbs, gutters, and driveway approaches were built, in some instances sewer laterals were built or installed and the trees removed.

The common council of the city on January 19, 1960, adopted on motion the recommendation of the board of public works which was to: (1) Assess the city's cost (15 percent) of widening and paving against abutting property owners on a special-assessment basis for a pavement width of 38 feet only (the usual width for new residential streets), the remaining 10 feet of the 48-foot street to be paid out of general funds; (2) assess abutting property owners on a 50–50 basis with the city and the owners each paying one half the total cost of the sidewalks; (3) the city to pay the full cost of the replacement of the sanitary sewer; and (4) assess the cost to the property owners of replacing sanitary-sewer laterals from the center of the street to the back of the curb (where replacement is deemed necessary in the judgment of the city).

On February 2, 1960, the council adopted a resolution declaring its intention to exercise its power under sec. 66.60, Stats., to levy special assessments upon property on Arcadian avenue for benefits conferred upon such property by the improvement of the street, the total assessment not to exceed the total cost of the improvement nor to be greater than the benefits accruing from the improvement. The resolution directed the city engineer and director of public works to prepare a report in accordance with the requirements of

sec. 66.60 and, upon the filing of the report, the city clerk was directed to give notice of a public hearing on the report, again pursuant to the requirements of sec. 66.60.

At its meeting of February 16, 1960, the common council adopted a resolution that the board of public works be authorized and directed to prepare plans and specifications for the pavement, curb and gutter, sidewalks, and driveway approaches along Arcadian avenue. At the same meeting the common council adopted a recommendation of the board of public works setting the design of driveway approaches.

On March 2, 1960, letters were sent to each property owner involved advising them of the project, the assessment policy, and of the fact of meetings before the board of public works to explain the project.

On March 28, 1960, the director of public works filed with the city clerk his report pursuant to sec. 66.60, Stats., in accordance with the preliminary resolution of the common council of February 2, 1960.[2] The report consisted of Schedule A (sec. 66.60 (3) (a)), plans and specifications; Schedule B (sec. 66.60 (3) (b)), an estimate of the entire cost of the proposed improvements, broken down into street-lighting, sanitary sewer, storm sewer, pavement, curb, gutter, and concrete walk; Schedule C (sec. 66.60 (3) (c)) was an estimate of benefits and damages and net benefits and damages as to each parcel of property affected, made upon a view of each parcel for concrete pavement (including curb and gutter), sidewalk, and driveway approaches.

---

[2] Sec. 66.60. "SPECIAL ASSESSMENT AND CHARGES. . . .

"(3) The report required . . . shall consist of:

"(a) Preliminary or final plans and specifications.

"(b) An estimate of the entire cost of the proposed work or improvement.

"(c) An estimate, as to each parcel of property affected, of:

"1. The assessment of benefits to be levied.

"2. The damages to be awarded for property taken or damaged.

"3. The net amount of such benefits over damages or the net amount of such damages over benefits.

The city concedes by its stipulation contained in the record that it did not file a statement or schedule pursuant to sec. 66.60 (3) (d), Stats.,[3] to the effect that the work or improvement constituted an exercise of the police power.

On April 7, 1960, there was a public hearing before the common council, pursuant to notice. After this hearing the council, on motion duly made, seconded, and carried, adopted a resolution confirming and approving the assessment of benefits, directing the board of public works to advertise for bids, and otherwise providing for the completion of the project and the assessment of benefits.

The sewer laterals were not mentioned in the preliminary resolution of February 2, 1960, in the chief engineer's report of March 28, 1960, or in the final resolution of April 7, 1960. They were, however, included in the above-mentioned common council motions of January 19, 1960, and February 16, 1960.

From the resolution made on April 7, 1960, 17 property owners on Arcadian avenue appealed to the circuit court for Waukesha county under the provisions of sec. 66.60 (12), Stats.

In the trial of these cases, by stipulation of the parties, one case, that of Gerald and Thelma Thomas, was tried specifically, with evidence being permitted as to the general situation respecting the 16 other properties, and it was agreed that all of the appellants' cases would abide the result of the proceedings in the Thomas case.

Upon a motion for the purpose of limiting the issues, the parties entered into a stipulated statement of facts, which presented the following question to the trial court: Conceding that the respondent city did not file a statement or schedule,

---

[3] Sec. 66.60 (3) (d). "A statement that the property against which the assessments are proposed is benefited, where the work or improvement constitutes an exercise of the police power. In such cases the estimates required under par. (c) shall be replaced by a schedule of the proposed assessments."

pursuant to sec. 66.60 (3) (d), Stats., that the work on the improvement constituted an exercise of the police power—can the city now contend that a portion of such work, to wit, sidewalks, driveways, sewer laterals, and carriage walks, was done pursuant to an exercise of the police power and therefore is not in issue on this appeal?

The trial court on November 1, 1961, in its memorandum decision upon the motion, determined that the city elected to proceed under the provisions of sec. 66.60, Stats., and could not come into court and take the position that it was not acting under sec. 66.60, and ordered that all of the designated improvements actually constructed in the Arcadian avenue project, including the installation of sewer laterals, be made an issue on the appeal.

Trial was had before the court on November 3 and November 6, 1961. The trial court determined that the special assessment resolution of April 7, 1960, with reference to the Arcadian avenue street-widening program was null and void with respect to all special assessments against plaintiffs except for that assessment charge for sewer laterals.

The issue in the instant case on the appeal before this court is whether the city by proceeding under sec. 66.60, Stats., without filing a statement under sec. 66.60 (3) (d), is now precluded from making an assessment under the police power for the street improvement in question.

Sec. 66.60 (1) (a), Stats., entitled "Special assessments and charges," provides that "as a complete alternative to all other methods provided by law, any city . . . may, by resolution of its governing body, levy and collect special assessments . . . and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of such special assessment."

Sec. 66.60 (1) (b), Stats., provides two alternatives. The first of which provides that the property must be benefited

and the assessment cannot exceed the value of such benefit and the second provides that when making such an assessment in the exercise of its police power the assessment must be upon a reasonable basis as determined by the city's governing body, common council.

When a city proceeds under the police power pursuant to sec. 66.60, Stats., it must under sub. (3) (d) make "a statement that the property against which the assessments are proposed is benefited" and "in such case the estimates required under par. (c) shall be replaced by a schedule of the proposed assessments." There is no requirement that the statement include language to the effect that the city is proceeding under the police power and not the taxing power.

Schedule C of the report submitted to the common council by the director of public works, pursuant to sec. 66.60 (2), Stats., does not contain a statement that the property, against which the assessments were proposed, benefited. Nor does Schedule C contain a list of proposed assessments, but instead itemizes the benefits to each property owner.

The report was made pursuant to a preliminary resolution of the common council required by sec. 66.60 (2), Stats. The language of the resolution indicates clearly that the city was exercising its general taxing power and not the police power, to wit:

"The common council hereby declares its intention to exercise its power under sec. 66.60, to levy special assessments . . . for benefits conferred upon such property by improvement of the following streets: . . .

"The total amount assessed against the district shall not exceed the total cost of the improvements and the amount assessed against any parcel shall not be greater than the benefits accruing thereto from said improvements.

"The city engineer is directed to prepare a report consisting of: . . .

"c. An estimate as to each parcel . . . of the assessment of benefits to be levied for each improvement.

"The damages to be awarded for property taken as damaged by each improvement.

"The net amount of benefits over damages or of damages over benefits for each improvement.

"The total assessment against each parcel."

The city proceeded under sec. 66.60, Stats., to the exclusion of other methods it may have employed. The acts of the city and its agents under sec. 66.60 were consistent with the proposition that the city was acting under the taxing power and not the police power. The city is now estopped from asserting its police power.

The theory underlying estoppel as applicable in the instant proceeding is that the procedural steps of sec. 66.60., Stats., are jurisdictional and failure to conform to the procedural steps of the statutes is fatal to the exercise of the police power.

14 McQuillin, Mun. Corp. (3d ed.), pp. 57, 58, 59, sec. 38.07, states:

"The nature and extent of such power [to make public improvements] must be determined from the express grant, and municipal authorities must adhere strictly to its terms, for any material departure therefrom especially of a jurisdictional nature, is fatal to the validity of the assessment. This is to say that, in levying special assessments or taxes due observance of all mandatory and jurisdictional provisions of the applicable law is indispensable. All limitations expressed or implied therein must be strictly observed. If the applicable law prescribes the mode of exercising the power, the mode prescribed must be followed, or the assessment will be void; . . ."

The evidentiary facts and testimony establish that the widening of Arcadian avenue was not done to benefit abutting residential properties, but to facilitate the movement of traffic on State Trunk Highway 59. Some of the increased traffic is due to an ordinance rerouting trucks to Arcadian avenue

and it is improbable that such rerouting would have occurred had not Arcadian avenue been widened. In fact, the testimony of the expert witnesses relates that the value of the property abutting Arcadian avenue had a material decrease in valuation. The city contends that fair market value is not the only test which can be applied, but does not suggest another.

Sec. 66.60 (1) (b), Stats., provides:

"The amount assessed against any property for any work or improvement which does not represent an exercise of the police power shall not exceed the value of the benefits accruing to the property therefrom, . . ."

*Extrom v. Tomahawk* (1950), 257 Wis. 348, 350, 43 N. W. (2d) 357, quotes with approval the following language of *Bekkedal v. Viroqua* (1924), 183 Wis. 176, 198, 196 N. W. 879, 197 N. W. 707:

" 'We shall attempt to lay down no rule in this case, but one test often applied is, Is the difference between the fair market value of the property after the improvement is made and the fair market value of the property prior to the making of the improvement equal to or greater than the amount of the assessment? See 2 Page & Jones, Taxation by Assessment, sec. 653, and cases cited.

" 'If the cost of the improvement exceeds the amount of the benefits such excess cost must be borne by general taxation. It cannot be imposed upon the property owner in the form of a special assessment.' "

That part of the judgment appealed from which determines that the special assessment is null and void is supported by the great weight and clear preponderance of the evidence, and therefore is affirmed.

*By the Court.*—Judgment affirmed.