Theresa DITTBERNER, Vernon P. and Dorothy Roske, and Johnson Cheese Equipment, Incorporated, Plaintiffs-Respondents,

v.

WINDSOR SANITARY DISTRICT NUMBER 1, Defendant-Appellant.

Court of Appeals

*No. 96–0877. Oral argument November 21, 1996.—*

(Also reported in 564 N.W.2d 341.)

For the defendant-appellant the cause was argued by *Timothy D. Fenner* of *Axley Brynelson* of Madison.

For the plaintiffs-respondents the cause was argued by *Nicholas J. Loniello* of *Loniello, Johnson & Simonini* of Madison.

Before Eich, C.J., Vergeront and Roggensack, JJ.

EICH, C.J. The Windsor Sanitary District appeals from a judgment voiding its attempted

"amended assessment" of property belonging to Theresa Dittberner, Johnson Cheese Inc. and Vernon and Dorothy Roske.

The issues concern the District's power to amend an assessment after completion of the project for which the assessment was made and to include property that was outside the District's boundaries at the time of the original assessment. We conclude that the District did not exceed the authority granted it by § 66.60(10), STATS., to amend the assessment. We thus reverse the trial court's judgment.

## I. Background

Early in 1994, the District's western boundary ran along Lake Road in the Town of Windsor. When the owners of businesses to the east of Lake Road—property that was within the District—began expanding their facilities, they approached the Windsor Sanitary Commission[1] about the possibility of extending a sewer line to their lands. After considering several alternatives, the commission decided to run the line along Lake Road. That plan, while more expensive than simply connecting the businesses to an existing line, appeared to the commission to be the most cost-effective because it would extend service to the western side of Lake Road, including the Dittberner, Johnson Cheese[2] and Roske lots, which were then outside the District's boundaries.

In mid-June 1994, the commission advertised for bids for the sewer extension project. By mid-summer, it had accepted one of the proposals and adopted resolu-

---

[1] The commission is in charge of all affairs of the town sanitary district. Section 60.77(1), STATS.

[2] In regard to the Johnson Cheese property, only the northern portion is at issue in this case.

tions requesting the Windsor Town Board to add the Dittberner, Roske and Johnson Cheese properties to the District.[3]

On September 16, 1994, the board entered an order adding the Johnson Cheese property to the District. Construction of the extension proceeded, and by October it had been completed and paid for by the commission.

On November 14, the commission adopted a "preliminary resolution" declaring its intention to exercise its special assessment powers under § 66.60, STATS.—the general special-assessment statute—to pay for the extension. The resolution stated that the assessment was being made under its "police powers," and the engineer's report indicated that the commission intended to assess the Johnson Cheese property immediately and make the Dittberner and Roske lots subject to a "deferred assessment." On November 29, the commission issued a notice that a hearing on the proposed assessment would be held on December 12, 1994. The notice went to all affected property owners, although there is a dispute—apparently never resolved below—as to whether Dittberner, Johnson Cheese and the Roskes all received it.

On December 2, the board added the Dittberner and Roske properties to the District, and the December 12 hearing proceeded as scheduled. Vernon Roske and a representative from Johnson Cheese appeared at the hearing and, at its conclusion, the commission adopted a "final resolution" levying the assessments in question and stating again that it was acting pursuant to its "police powers." The Dittberner and Roske assess-

---

[3] Town sanitary districts do not have power to alter their boundaries; the town board must undertake any such action. Sections 60.785(1), 60.71, STATS.

ments were not deferred, as proposed in the original resolutions, but were included in the levy, notice of which was issued to all property owners.

Realizing that the assessment contained some "procedural irregularities," the commission decided to reopen and reconsider it, which it did in February 1995. A District engineer filed a new report, and a public hearing was noticed and held on the proposed amendments to the assessment. Dittberner, Johnson Cheese and the Roskes presented their objections to the assessments at the hearing, after which an "amended and restated final resolution" was adopted indicating that the Dittberner and Roske properties and the northern portion of the Johnson Cheese property would be eligible for deferred assessment with payment due on March 13, 2005, or when a sewer hook-up permit was issued or ownership of the property changed, whichever occurred first.

The three property owners then brought this action, seeking to void the assessment and reassessment and to prevent future reassessment. The trial court ruled that the failure to follow the statutory requirements was a jurisdictional error that could not be cured by the attempted reassessment and granted the owners' motion for summary judgment. The District appeals.

## II. Standard of Review

■■■■■

Summary judgment is appropriate in cases in which there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). When, as is the case here, the material

facts are not in dispute, the only issue on appeal is whether the moving party is entitled to judgment as a matter of law. *Biggart v. Barstad*, 182 Wis. 2d 421, 428, 513 N.W.2d 681, 683 (Ct. App. 1994). Therefore, we apply the same methodology as the trial court and we consider the issues *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

## III. Validity of the Reassessment

### A. "Jurisdictional Defect"

The District, acknowledging that its original assessment was void, argues that the reassessment statute,[4] § 66.60(10), STATS., authorizes the procedures it followed in this case. The statute provides in pertinent part as follows:

> If . . . any assessment is void or invalid for any reason, or if the governing body shall determine to reconsider and reopen any assessment, it is empowered, after giving notice . . . and after a public hearing, to amend, cancel or confirm any such prior assessment . . . .

The property owners maintain that the District could not properly include their property in the reassessment because the sewer extension had been approved and substantially constructed at the time their lands were added to the District. Citing two early cases, *Schintgen v. La Crosse*, 117 Wis. 158, 94 N.W. 84

---

[4] The cases refer to the § 66.60(10), STATS., "amendment" process as a "reassessment." *See, e.g., Christenson v. City of Green Bay*, 72 Wis. 2d 565, 567-69, 241 N.W.2d 193, 194-95 (1976); *Area Bd. v. Town of Burke*, 151 Wis. 2d 392, 400-01, 444 N.W.2d 733, 737-38 (Ct. App. 1989).

(1903), and *Dean v. Charlton*, 23 Wis. 590 (1869), they argue, in essence, that the statute does not give the District "the power to do after the fact that which [it] lacked power to do in the first instance."

In *Schintgen*, the supreme court discussed the principles governing reassessments at some length. The court said that whether an invalid assessment can be remedied by reassessment turns on whether the invalidity is the result of a "jurisdictional defect," as opposed to a "procedural defect." *Schintgen*, 117 Wis. at 164, 94 N.W. at 86. The court noted, however, that use of the term "jurisdictional defect" is more confusing than it is helpful because "the fact that a defect may be properly termed jurisdictional is by no means a test" of whether a reassessment may be undertaken. *Id*. In other words, according to *Schintgen*, some "jurisdictional" defects are truly jurisdictional, in that the municipality lacks the power to correct them, while others are not.

It is clearer, we think, to discuss the subject in terms of the nature of the defects or improprieties that are subject to cure by reassessment or amendment, and the nature of those that are not.

When the municipality lacks power to levy the assessment from the start—in the *Schintgen* court's words, when the law did not authorize the assessment against the property "under any circumstances at the time the work was done and the original assessment made"—that defect may *not* be cured by reassessment. *Id*. at 163, 94 N.W. at 86. An assessment "which could not be legally assessed under any circumstances, by reason of the absence of any law authorizing it," cannot be validated by reassessment. *Id*. at 164, 94 N.W. at 86.

On the other hand, where the original assessment is rendered invalid by "nonconformity with or a minor

485

deviation from the provisions of the assessment statute"—or even by a "material defect or omission" in the proceedings—that invalidity can be corrected "under the provisions of a proper reassessment law," as long as due process is satisfied and the municipality had the legal ability to levy the assessment in the beginning. *Id.* at 164-65, 168, 94 N.W. at 86-87; *see also Bekkedal v. Viroqua,* 183 Wis. 176, 196, 196 N.W. 879, 886 (1924).

Because the law states, in § 66.60(10), STATS., that a reassessment may be made whenever the first assessment is void "for any reason," it follows that as long as the assessment could have been levied "in the first instance," the fact that it was defective for noncompliance with statutory procedures does not prevent correction of the error by reassessment.[5]

The only cases to which we have been referred that involved a "noncorrectable" defect in the original proceedings are *Schintgen*—where the property was specifically exempt from assessment by law—and *Dean,* where the underlying assessment was illegal. In the instant case, we are never told precisely why the District considered the first assessment invalid. While one might infer from the timing of the addition of the plaintiffs' lots to the District that the District simply wanted to "start over" in order to bring them in, the only reference to the subject in the record is found in

---

[5] In *Christenson,* 72 Wis. 2d at 565, 568, 241 N.W.2d at 194-95, for example, § 66.60(10), STATS., was applied to permit a reassessment where the original assessment was void for the municipality's failure to comply with statutes dictating the content of the city engineer's report. We reached a similar conclusion with respect to absence of the required "statement of benefit" in *Gelhaus & Brost, Inc. v. City of Medford,* 143 Wis. 2d 193, 198, 420 N.W.2d 775, 777 (Ct. App. 1988).

the commission's minutes dated February 1, 1995, which state: "Whereas, the Commission . . . has been advised of certain procedural irregularities regarding the Lake Road Special Assessments which may result in such assessments being declared to be invalid, . . . . the Commission has pursuant to Section 66.60(10), . . . decided to reconsider and reopen such assessments."

We have not, in short, been referred to any evidence indicating that the defect prompting the reassessment was not of a type that could be corrected by reassessment under § 66.60(10), STATS.

The property owners disagree. They argue first that the District—by adopting the "preliminary resolution" stating its intention to exercise its assessment powers *after* the improvement had been put in place—"reversed the procedure required by . . . statute"[6] and that such a "defect" may not be cured by reassessment. We consider this the type of procedural violation—the type of "material defect or omission in the process"—that *Schintgen* and similar cases have recognized as being "correctable" through reassessment. As such, it is not fatal to the District's ability to reassess.

In *Bekkedal*, 183 Wis. at 198, 196 N.W. at 887, the supreme court held that although the municipality failed to establish and record the grade of a proposed street before levying the assessment to pay for it, as the then-existing statute required, it was still entitled to reassess "even though the work has been completed." *Bekkedal* was reaffirmed in *Extrom v. Tomahawk*, 257 Wis. 348, 43 N.W.2d 357 (1950), where the court again

---

[6] Section 66.60(2), STATS., provides: "*Prior to the exercise of any powers* conferred by this section, the governing body shall declare by preliminary resolution its intention to exercise such powers for a stated municipal purpose." (Emphasis added.)

held that even though the city levied a defective special assessment, it had jurisdiction to reassess, although the work had been completed before the reassessment proceedings began. *Id.* at 350-51, 43 N.W.2d at 358; *see also City of Milwaukee v. Taylor,* 229 Wis. 328, 346-47, 282 N.W. 448, 457 (1938) ("We perceive no ground upon which the taxpayer can legitimately object if he is assessed for special benefits which have been conferred upon him although the benefit may have been conferred prior to the making of the assessment.").[7]

It is true that *Bekkedal* and *Extrom* arose under a statute providing for reassessment when the work "has been done, or may hereafter be done."[8] We agree that

---

[7] *Extrom v. Tomahawk,* 257 Wis. 348, 43 N.W.2d 357 (1950), thus upheld the reassessment even though the improvements had been installed absent compliance with the statutory procedures for assessment, contrary to the property owners' position in this case. The owners attempt to distinguish the case, however, on grounds that it involved a "benefit" assessment, as opposed to a police power assessment. According to the owners, the crucial difference is that in a benefit assessment, the property owners remain "well protected" because they have the right to a judicial determination on whether the assessment exceeds the benefit to the property, and in a police power assessment no similar protection is given. The argument is without merit. Section 66.60(12)(a), STATS.—the very statute under which the property owners brought this action—provides for judicial review of both police power and benefit assessments. *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 371, 453 N.W.2d 177, 180 (Ct. App. 1990).

[8] The original Wisconsin reassessment statute, § 1210*d,* STATS., 1898, as amended by Laws of 1901, ch. 9, § 1, provided as follows:

**Reassessment of void special assessments.** Section 1210*d.* Where the work of constructing any sewer . . . in any city has been

§ 66.60(10), STATS., does not contain that precise language; but, by the same token, neither is there anything in its terms that would limit a municipality's ability to reassess to situations in which construction has not yet commenced.[9] We believe that the statute's

> done or may hereafter be done, and any special assessment has been or may be made against any property for such work, and such special assessment . . . is invalid because of said work having been done without authority of law or for failure to make a proper assessment of benefits and damages, or to observe any provision of law, or because of any act or defect in the proceeding upon which assessment . . . is based . . . the city authorities shall proceed to make a new assessment of benefits and damages in the manner required by law in the case of such original assessment.

Section 1210d was later renumbered as § 75.56, STATS.

As originally enacted in 1945, the reassessment provision of § 66.60, STATS., stated:

> Whenever the actual cost of any project shall, upon completion or after the receipt of bids, be found to vary materially from the estimates, or whenever the governing body shall determine to reconsider and reopen any such assessment of benefits or damages, it is hereby empowered, after giving notice . . . and after public hearing, to amend, cancel or confirm any such prior assessment . . .

Section 66.60(12), STATS., 1945, as created by Laws of 1945, ch. 269.

In 1957, the legislature repealed §§ 75.56 and 66.60, STATS., and created § 66.60 in its present form—no longer limiting reassessment to excess-cost situations but permitting reassessment where the original assessment was "void or invalid for any reason." Section 66.60(10), STATS.; Laws of 1957, ch. 130, § 2, ch. 131, § 27.

[9] An often-cited treatise on the subject notes:

> Reassessments for improvements made are commonly allowed under specified restrictions, e.g., where the original assessment is unenforceable by reason of error or irregularity. If the improvement has been made without any intention of meeting the cost by local assessment, the municipal corporation cannot thereafter

broad "for any reason" language, coupled with its express recognition that reassessment may be made after completion of the project when the final costs vary from the original estimates, forecloses such a restrictive interpretation.[10]

The property owners next argue that the District, by reassessing after adding their lots to the levy, in effect changed its boundaries on its own—something it

---

reimburse itself for the cost by levying an assessment. But if the improvement proceedings are properly had with a view of paying for the same by local assessment, and the improvement is made and paid for by the municipality, the municipality may reimburse itself by imposing assessments.

EUGENE MCQUILLAN, THE LAW OF MUNICIPAL CORPORATIONS § 38.09 (3d ed. 1987) (citing *City of Milwaukee v. Taylor*, 229 Wis. 328, 282 N.W. 448 (1938)).

[10] We think the District is also correct when it notes that, given a municipality's authority to amend or confirm an assessment that is invalid or void for any reason, it is to be expected that, in some instances at least, the improvement will be in progress or substantially completed when the municipality "starts over" under § 66.60(10), STATS. Indeed, that was the case in *Extrom*, and the supreme court in both *Extrom* and *Taylor* rejected the argument that the municipality lacked jurisdiction to assess or reassess after completion of the project.

A reassessment proceeding, by its very nature, is a remedial procedure and we think it is inevitable that there will be situations in which the improvements set in motion by the original assessment may be in some stage of completion when the original assessment is determined to be or is held invalid. To interpret § 66.60(10), STATS., to allow a municipality to reassess only in situations in which the construction of the improvement had not yet begun, or was not completed, would frustrate the statute's plain purpose, as evidenced by its plain language, to permit the municipality to reassess when the original assessment is void "for any reason."

is not authorized by law to do. We agree that a sanitary district has no independent authority to alter its boundaries but is limited to requesting the town board to add property to the district. *See Haug v. Wallace Lake Sanitary Dist.*, 130 Wis. 2d 347, 353, 387 N.W.2d 133, 136 (Ct. App. 1986); § 60.785(1)(b), STATS. That is what the District did here and, as we have said, the fact that the work was either underway or had been completed by the time this was accomplished is not the type of defect that is beyond the District's power to cure via reassessment under § 66.60(10), STATS.

## B. Estoppel

The property owners contend that even if the District had the ability to reassess, it should be estopped from doing so—again because it failed to comply with the statutory procedures in the initial proceedings. In so arguing, they rely on *Thomas v. City of Waukesha*, 19 Wis. 2d 243, 120 N.W.2d 58 (1963), where the supreme court applied estoppel principles to prevent a city from arguing that it had proceeded under its police power in levying a special assessment when it had plainly levied the assessment pursuant to its general taxing power. *Id.* at 250, 120 N.W.2d at 62.

We think *Thomas* is readily distinguishable. First, it involved an assessment, not a reassessment, proceeding, and, as indicated, the issue before the court was whether the city could maintain on appeal that the assessment proceeded under its police power when all of its actions clearly led to the conclusion that it was acting under its general taxing authority in levying the assessment. Second, in a later case, *Christenson v. City of Green Bay*, 72 Wis. 2d 565, 568, 241 N.W.2d 193, 195 (1976), the court, facing a situation similar to the one

before us here—a challenge to a municipality's § 66.60(10), STATS., reassessment "where its original assessment . . . had been found to be procedurally invalid"—distinguished *Thomas* as arising on a set of wholly dissimilar facts. We reach the same conclusion here and reject the property owners' estoppel argument.

## IV. Due Process

As we discussed above, under *Schintgen*, to be valid a "corrective" reassessment procedure such as that provided by § 66.60(10), STATS., must "preserve[ ] to the property owner his [or her] right to be heard and all the essentials of due process of law." *Schintgen*, 117 Wis. at 166, 94 N.W. at 87. The property owners argue that because the hearing on the reassessment came only after completion of the project, they did not receive the process they were due.

In discussing the process due the parties to a reassessment proceeding, the *Schintgen* court stated:

> [T]he legislature may ratify and cure, through reassessment by the local authorities that which it might have constitutionally and lawfully authorized in the first instance. By this it is not meant . . . that the constitutional requirement of "due process of law" can be overridden. This court has held that . . . provisions authorizing assessments without notice, actual or constructive, at any time to the property owner, are void because made without due process of law. But this notice need not necessarily be before the improvement is made. The property owner has no constitutional right to be heard as to the character of the improvement nor the manner of its construction. It is enough if the law provides for notice and hearing at some time during the proceed-

ings . . . . if a reassessment law gives the property owner full notice and opportunity to be heard as to the amount of his assessment, it cannot be held unconstitutional . . . provided there was a law in existence at the time of the improvement authorizing such work to be done and paid for by special assessments upon property owners.

*Id.* at 164-65, 94 N.W. at 86.

The property owners rely on an Oregon case, *Heritage Square Development Co. v. City of Sandy*, 648 P.2d 1317 (Or. Ct. App. 1982), which they say upheld a claim similar to the one they make here: that when no hearings were held prior to construction of the improvement, reassessment cannot cure such a "defect." The applicable Oregon assessment laws, however, gave property owners within the area the right of "remonstrance"—the power to nullify the proposed assessment by filing or making objections at the hearing.[11] In *Heritage Square*, the original assessment was held invalid due to a procedural defect and while a hearing was held in connection with the reassessment proceedings, the owners were not permitted to "remonstrate." The Oregon court, voiding the reassessment, emphasized that the right to "defeat [the proposal] by remonstrance" was such a "substantial right" that it could not be taken away. *Id*. at 1323. Thus, concluded the court,

---

[11] The city ordinance under which the assessment was undertaken included the following provision: "If, prior to or during the hearing, written objections are received from owners, representing two-thirds of the area to be assessed, the improvement proceedings shall be abandoned . . . ." *Heritage Square Dev. Co. v. City of Sandy*, 648 P.2d 1317, 1318 n.1 (Or. Ct. App. 1982).

when reassessment provisions fail to afford sub-
stantial rights equivalent to those mandated at
each stage of the original proceeding to [construct
an improvement] . . . the city must repeat the point
of the first defect that rendered the assessment void
. . . .

*Id.* at 1324.[12]

Unlike Oregonians, Wisconsin landowners do not
have the right to a hearing at which they might vote to
defeat the proposed assessment. Indeed, the hearing
required by the assessment statute, § 66.60(7), STATS.,
is limited in scope. The statute states only that, after
the municipality has prepared its "report" in support of
the preliminary resolution, a hearing must be held "at
which all persons interested . . . may appear before the
governing body . . . and be heard concerning the mat-
ters contained in the preliminary resolution and the
report." Section 66.60(7). And, after the hearing, "the
governing body may approve, disapprove or modify . . .
the report." Section 66.60(8).

Thus, in Wisconsin at least, property owners do
not have the power to veto a proposed assessment.
They have the right to judicial review of the municipal-
ity's action, and that recourse is not affected, much less
lost (as occurred in *Heritage Square*), by the reassess-
ment procedures utilized here. Indeed, as we noted, the
property owners availed themselves of that very rem-
edy in this case.

---

[12] In so concluding, the Oregon court noted that, while reas-
sessment could cure "defects in the assessment proceedings," it
could not cure the city's "lack of jurisdiction to make the
improvement" in the first place. *Heritage Square*, 648 P.2d at
1323-24. It is, of course, a distinction the Wisconsin Supreme
Court recognized in *Schintgen*, which we discussed at some
length above.

494

█

Section 66.60(10), STATS., mandates notice and hearing in the reassessment process as well. As a result, the affected owners have the same rights to appear and voice their support or opposition at the reassessment hearing as they do in original assessment proceedings. There is no claim in this case that Dittberner, Johnson Cheese or the Roskes were denied that right; indeed, the record shows that they made their positions known at the reassessment hearing. They received the process that was due them under the statutes and under the supreme court's decision in *Schintgen* and similar cases, and we do not see *Heritage Square* as lending significant support to their arguments to the contrary.[13]

---

[13] The property owners also discuss an earlier Oregon case, *Murray v. City of LaGrande*, 149 P. 1019 (Or. 1915), where the court held that the city could not reassess because the property owners were entitled to a hearing prior to construction of the project. The Oregon reassessment statute at the time required any reassessment to be conducted "in like manner" to the original proceedings, which, the court said, plainly required a hearing in advance of construction. *Id.* at 1021. The court noted, however, that the city could have, by ordinance, "dispense[d] with all previous notice of intention to install betterments and . . . empower[ed] the council to call upon the taxpayer for the first time after the work was completed, but it has not done so." *Id.*

There is no "in like manner" language in § 66.60(10), STATS. Indeed, as we stress throughout this opinion, the Wisconsin statute permits reassessment when the original assessment is void for any reason and provides for new hearings as part of the reassessment process.

## V. Reasonableness of the Assessment

Finally, the property owners claim that the front-foot method used to assess their lots was unreasonable as a matter of law.

As we have noted above, this was a "police-power" assessment. A municipality's police power is broad and courts may intercede only when the exercise of that power is clearly unreasonable. *Lac La Belle Golf Club v. Lac La Belle*, 187 Wis. 2d 274, 280-81, 522 N.W.2d 277, 280 (Ct. App. 1994). One challenging such an assessment bears the burden of presenting evidence to overcome the presumption that the municipality proceeded reasonably. *Id.* at 281, 522 N.W.2d at 280. If the plaintiff establishes a *prima facie* case, the burden shifts to the municipality to show that the assessment was made on a reasonable basis. Section 66.60(1)(b), STATS.; *Peterson v. City of New Berlin*, 154 Wis. 2d 365, 371, 453 N.W.2d 177, 180 (Ct. App. 1990).

While the front-foot method of assessment is commonly used, whether it is reasonable in a given case turns on "[t]he facts of the particular situation," and whether it is " 'fair and equitable and such that it will bring about an assessment in proportion to the benefits accruing.' " *Peterson*, 154 Wis. 2d at 373-74, 453 N.W.2d at 180-81 (quoted source omitted).

Dittberner and the Roskes claim they will incur additional expenses as a result of the extension of service to their lands—for things like ground fill, grinder pumps and lift stations—and they state that because the front-foot method does not fairly apportion these extra costs, which they say were not imposed on other property owners, it unreasonably burdens them.

We held in *Peterson* that it is unreasonable and unfair to use the same method to assess a group of

property owners when, because of differences in the situations of some members of the group, it results in "an entirely disproportionate distribution of costs which easily could be avoided by using another basis for assessment." *Id*. at 373, 453 N.W.2d at 181. But the property owners in this case have not indicated to us how the benefits accruing to them are outweighed by the assessment costs, whether and to what extent the assessment is disproportionate among the assessed property owners, or how another method of assessment might have brought about a fairer result.

The property owners also contend that the sewer line is inadequate to service the Dittberner and Roske parcels beyond the first fifty feet, and then it can serve only an eight-foot strip of land because the properties have a forty-two-foot zoning setback. Again, however, even if true, these assertions do not establish that the method of assessment is unreasonable as a matter of law because whether a parcel is benefited by an improvement does not depend on its development potential; a benefit may accrue even when it is established that the land will not be developed in the foreseeable future or when there is no present use of the improvement. *Soo Line R.R. Co. v. City of Neenah*, 64 Wis. 2d 665, 671-72, 221 N.W.2d 907, 910-11 (1974); *Duncan Dev. Corp. v. Crestview Sanitary Dist.*, 22 Wis. 2d 258, 267-69, 125 N.W.2d 617, 621-22 (1964).[14]

We conclude, therefore, that the property owners have not overcome the presumption of regularity attaching to the District's actions and that their chal-

---

[14] We note in this regard that at another point in their brief, the property owners point to affidavits in the record in which they state that they have "no desire or intention of developing [the] land" serviced by the Lake Road sewer.

lenge to the assessment on its merits must fail. We therefore reverse the judgment voiding the reassessment and remand for proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.