FIRST STATE BANK, Plaintiff-Appellant,

v.

TOWN OF OMRO, Wisconsin,
Defendant-Respondent.

Court of Appeals

*No. 2015AP403. Submitted on briefs September 22, 2015.
—Decided November 11, 2015.*

## 2015 WI App 99

(Also reported in 873 N.W.2d 247.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Philip A. Munroe* of *McCarty Law LLP*, Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ryan R. Graff* and *Andrew L. Stevens* of *Nash, Spindler, Grimstad & McCracken LLP*, Manitowoc.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J. The issue presented is whether a municipality may use its police powers to build roads and levy special assessments against the land benefitted after a developer defaults in its obligation to build the roads. The Barony subdivision, a seventy-four lot subdivision in the Town of Omro, received final plat approval in 2004. By 2009, only a few of the lots had been sold and First State Bank had acquired all sixty-five remaining lots in lieu of foreclosure. As of 2009, the roads in the subdivision had not been paved. In 2013, the Town authorized finishing the roads and specially assessed the lots within the Barony subdivision for the cost of completing the roads.

¶ 2. The Bank challenges the Town's authority to levy the special assessments as to all lots and specifically challenges the assessments as to lots four, five, and fifty-five, which do not abut any of the roads built by the Town. We affirm that part of the circuit court's summary judgment decision ratifying the Town's special assessment against the lots that benefit from the road project. We reverse that part of the court's decision that found that the three lots not abutting the improved roads received special benefits; there is a genuine factual dispute over this issue, making it inappropriate for resolution at the summary judgment stage.

## BACKGROUND

¶ 3. The Barony LLC and the Town entered into a development agreement in July 2004 in conjunction with the Town's final plat approval for the Barony subdivision. The agreement required Barony LLC to construct, complete, and pay for all roads in the subdivision. Construction of the roads was to proceed in three phases, with the first two phases to be completed by July 30, 2006, followed by the final paving to be done by Barony LLC "pursuant to the Road Development Ordinance and only when authorized and required by the Town Board." The Town's Road Development Ordinance provides in relevant part,

*PURPOSE*

The purpose of this ordinance is to establish minimum construction standards for public roads in the Town. Unless the Town Engineer recommends otherwise, and the Town Board concurs, these specifications shall apply to construction, reconstruction or repair of all roads regardless of whether they are in a plat.

225

. . . .

### 15. Asphaltic Pavement

. . . .

When 70%-80% of the lots are developed, a minimum of one year after basecourse placement, and not more than three years after sealcoating, the road may be paved . . . .

The development agreement will dictate the method of payment for the paving. Payment will come directly from the developer, from a special assessment on the development, or another method approved by the Town Board.

TOWN OF OMRO, WIS., ROAD DEV. ORDINANCE (Sept. 9, 2002) ("Ordinance").

¶ 4. The Bank refinanced the loan for the subdivision project in January 2006. The loan later went into default, and the Bank acquired ownership of the unsold lots in 2009. As of 2009, none of the subdivision roads were paved, although three of the Bank's lots (four, five, and fifty-five) fronted on existing roads outside of the subdivision that were already paved.[1]

¶ 5. The unfinished state of the roads in the Barony subdivision became a problem, with postal and busing services expressing concerns about driving in the subdivision. On August 30, 2013, the Town board passed a preliminary resolution stating its intent to exercise its police power to levy special assessments upon properties in the Barony subdivision based on the benefits that they would receive from the "[g]rading and paving (first course) of the roadway within the Barony Subdivision." The preliminary resolution directed the Town engineer to prepare a final report for the project,

---

[1] Barony LLC is apparently defunct and was not made a party to this action.

including plans and specifications for the public improvements. The engineer's report, which was filed with the municipal clerk for public inspection, provided for both upper and lower courses of asphalt paving within the Barony subdivision. A final resolution adopted and approved the engineer's report as well as ratified and confirmed "[a]ll actions heretofore or hereafter taken for the purpose of carrying" out the special assessment on the properties in the Barony subdivision.

¶ 6. The sum of the special assessments on the lots owned by the Bank in 2013 totaled $219,641.60. The Bank appealed the special assessment pursuant to Wis. Stat. § 66.0703(12) (2013–14).[2] The Bank contended the special assessment was improper as: (1) the development agreement required the developer to pay for the roads; (2) the Ordinance prohibited the road work as seventy percent of the Barony subdivision's lots had not yet been developed; (3) at the time the special assessments were imposed, the subdivision's roads were privately owned; (4) lots four, five, and fifty-five were not specially benefitted by the paving of the roads as they were not adjacent to the roads; and (5) the wording of the preliminary and final resolutions did not conform with § 66.0703. Both the Bank and the Town moved for summary judgment.

¶ 7. The court granted summary judgment to the Town, determining that the special assessment was proper as it was levied upon property in a limited and determinable area for special benefits conferred on the property, including lots four, five, and fifty-five; the special benefit was "the use of the roads within the development"; and the assessment had a reasonable

---

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

basis. The court also found that the roads are public roads, and as there currently is no developer, "there is no way for the developer to pay for the roads" pursuant to its agreement with the Town. The court also found that the Ordinance's requirement that seventy percent of the lots be developed prior to road paving was a "catch-22" situation, given that the developer no longer was involved with the subdivision and the subdivision remained more than seventy percent undeveloped, making it impossible to perform that aspect of the agreement in conformance with the Ordinance. The Bank appeals the circuit court's decision.

## STANDARD OF REVIEW

■

¶ 8. We review summary judgments de novo and will affirm the circuit court if the evidence in the record establishes there is no genuine issue of material fact and the party awarded summary judgment is clearly entitled to judgment as a matter of law. *Genrich v. City of Rice Lake*, 2003 WI App 255, ¶ 6, 268 Wis. 2d 233, 673 N.W.2d 361.

## DISCUSSION

■

¶ 9. A town may exercise its police power to levy special assessments to pay for public improvements. Wis. Stat. § 66.0703(1). This power is broad, but not unfettered. *Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 281, 522 N.W.2d 277 (Ct. App. 1994). The public improvement must be local, meaning that while it may incidentally benefit the public at large, it "is primarily made for the accommodation and

convenience of inhabitants of a particular locality and confers 'special benefits' to their properties." *Genrich*, 268 Wis. 2d 233, ¶ 8. The assessment also must be "fair and equitable and in proportion to the benefits accruing." *Peterson v. City of New Berlin*, 154 Wis. 2d 365, 371, 453 N.W.2d 177 (Ct. App. 1990). A town wishing to exercise its power to levy special assessments must follow the procedures outlined by § 66.0703(4)-(8). *Emjay Inv. Co. v. Village of Germantown*, 2011 WI 31, ¶ 28, 333 Wis. 2d 252, 797 N.W.2d 844.

¶ 10. On appeal, the Bank raises the same five arguments that it made in the circuit court. These arguments follow two themes: the Town acted outside of the authority granted to it by the legislature and the Town failed to follow the requirements of WIS. STAT. § 66.0703.

### A. *Whether the Town Exceeded Its Statutory Authority*

¶ 11. The Bank raises two challenges to the Town's authority to levy the special assessments—that the Town was bound to seek financing for the road project from the developer and that the Town was prevented by the Ordinance from proceeding with the road project before at least seventy percent of the lots in the subdivision had been developed.

### 1. *Development Agreement*

■

¶ 12. The Bank bases its argument that the Town may not levy a special assessment to pay for roads in the Barony subdivision on two documents: the Ordinance and the development agreement. The Ordinance provides that payment for paving roads "will come directly from the developer, from a special assessment on the

development, or another method approved by the Town Board" and that "[t]he development agreement will dictate the method of payment for the paving." ORDINANCE § H-15. The development agreement, in turn, provides that Barony LLC will "be responsible for all development phases of the roads . . . including final paving" and that Barony LLC will provide the Town with a financial guarantee to ensure performance of its obligations in the form of an irrevocable letter of credit. Based on these documents, the Bank argues that the Town's only recourse for payment for the roads was from Barony LLC. We disagree.

¶ 13. Neither the Ordinance nor the development agreement constrain the Town from exercising its power to levy special assessments to pay for public improvements—in this case, paved roads—benefitting property owners in the Barony subdivision. The fact that the Town originally arranged for an alternative way to pay for the public improvements does not mean that it was limited to that alternative when the developer defaulted on its promise and the subdivision's roads remained unfinished nearly a decade later. Nor does Barony LLC's default require the Town to abandon the roads or have the general public shoulder the burden of providing finished roads to the Barony subdivision. So long as the special assessment comported with WIS. STAT. § 66.0703(1) and the Town followed the procedures provided in § 66.0703(4)-(8), the special assessment was a valid exercise of the Town's police power.

¶ 14. The Bank relies on *Country Meadows West Partnership v. Village of Germantown*, 2000 WI App 127, 237 Wis. 2d 290, 614 N.W.2d 498, to argue that the Town could not exercise its police power and levy special assessments in contradiction to the procedure for pay-

ment set forth in the development agreement. The Bank's argument misses the mark. The *Country Meadows* decision concerned a breach of contract action filed by the developer, *id.*, ¶ 8, and is inapplicable in this context as Barony LLC was not made a party to this action.

### 2. *Seventy Percent Development Rule*

██

¶ 15. The Bank next argues that a special assessment cannot be levied to complete the subdivision's roads because the final paving occurred before seventy percent of the Barony subdivision lots were developed, contrary to the Ordinance. We disagree as the Ordinance specifically permits the Town board to deviate from the Ordinance's requirements.

¶ 16. The Ordinance expressly provides that while it is intended "to establish minimum construction standards for public roads in the Town," these specifications are only to apply "[u]nless the Town Engineer recommends otherwise, and the Town Board concurs." The Town engineer recommended otherwise when it prepared a report to pave the roads before seventy percent of the lots in the Barony subdivision had been developed. The Town board concurred with this recommendation when it passed a resolution adopting that report and providing for the work to be carried out irrespective of the development of lots in the Barony subdivision.

### B. *Whether the Special Assessment Meets the Statutory Requirements*

¶ 17. The Bank's appeal raises issues with the special assessment's compliance with Wis. Stat. § 66.0703 as (1) it does not fund a "public" improve-

ment because the roads were private at the time of the preliminary resolution, (2) three of the Bank's lots were not benefitted by the construction of roads in the subdivision, and (3) the preliminary resolution called for only one phase of asphalt work.

*1. "Public Improvement" Requirement*

██

¶ 18. The Bank argues that the assessment is void as the road work was performed on private property and, therefore, does not constitute a public improvement for which a special assessment may be levied. The Bank's argument fails as the roads within the subdivision were not private property. Wisconsin law provides that all roads or streets shown on a final subdivision plat are dedicated to the public unless clearly marked as private. WIS. STAT. § 236.20(4)(c). None of the roads were marked private on the final Barony subdivision plat, and the Town accepted the dedication of the roads. Section 236.20(4)(c) trumps the Bank's argument that the Town's subdivision ordinance requires an overt statement of dedication on Barony's certified plat.

¶ 19. The Bank alternatively argues that even if the roads were dedicated, the dedication had not been accepted by the time that the resolution authorizing the special assessment was adopted and, therefore, the special assessment is invalid. We disagree. Regardless of when acceptance of the dedication to the public took place, the improvement of the roads that are now public roads in the Barony subdivision constituted a public improvement. This improvement, therefore, is eligible for financing per WIS. STAT. § 66.0703 via a special assessment.

2. *"Special Benefit" to Three Bank-Owned Proper-
 ties*

■■■■

¶ 20. The Bank next contends that lots four, five,
and fifty-five should not have been levied special
assessments for any "special benefits" received from
the road project as they do not front on streets paid for
by the special assessment nor are the newly paved
roads necessary to access those lots. The subdivision
map reflects that lots four, five, and fifty-five front on
streets unassociated with the work performed by the
special assessment.

Special assessments may be levied only upon properties that receive a special benefit from a public improvement. *Genrich*, 268 Wis. 2d 233, ¶ 8. A "special benefit" per Wis. Stat. § 66.0703(1)(a) "has the effect of furnishing an uncommon advantage to a property . . . [differing] in kind, rather than in degree, from the benefits enjoyed by the general public." *Park Ave. Plaza v. City of Mequon*, 2008 WI App 39, ¶ 17, 308 Wis. 2d 439, 747 N.W.2d 703. An uncommon advantage will either increase services to a property or enhance its value. *Genrich*, 268 Wis. 2d 233, ¶ 13. The accrual of these benefits must be certain, substantial, and capable of realization in a reasonable amount of time. *Id.*, ¶¶ 14–15 & n.5. Whether a special benefit is conferred on a particular property is a question of fact. *Park Ave. Plaza*, 308 Wis. 2d 439, ¶ 20. Summary judgment is improper if specific facts could support a finding by a reasonable jury that a special benefit does not exist. *See id.*, ¶ 24.

¶ 21. The Bank presented credible evidence raising a genuine issue of fact as to whether lots four, five, and fifty-five receive a special benefit from the completion of roads that do not run across the front of their properties and are not necessary to reach their properties. A reasonable jury could find that these three lots received no greater benefit from the roads than any other owner of Town property located outside of the Barony subdivision, and as such, summary judgment was improper as to lots four, five, and fifty-five on this issue.[3]

---

[3] We do not imply that the three lots receive no benefit from the roads—just that it is clearly a question of fact as to whether a "special benefit" has accrued to those lots.

### 3. Resolutions' Compliance with Statutory Requirements

¶ 22. Finally, the Bank argues that the special assessment is invalid as the preliminary and final resolutions failed to strictly comply with WIS. STAT. § 66.0703. In particular, the Bank complains that the Town's preliminary resolution states that the special assessment would pay for only the first course of grading and paving and, therefore, does not meet the requirement of § 66.0703(4) that the preliminary resolution include the purpose for the exercise of its police powers.[4] The Bank also contends that the final resolution does not comply with the requirement in § 66.0703(8)(c) to "direct[] that the work or improvement be carried out." We reject the Bank's hypertechnical interpretation of the statute.

¶ 23. WISCONSIN STAT. § 66.0703(4) provides that before a municipality may exercise its power to impose a special assessment, "the governing body shall declare by preliminary resolution its intention to exercise the powers for a stated municipal purpose." Among other requirements, the preliminary resolution must "describe generally the contemplated purpose" of the special assessment. *Id.* Subsequent to the preliminary resolution, a detailed report on the work to be done must be completed and filed for public inspection, *see*

---

[4] We are puzzled by the Bank's argument on this point as the record includes a joint stipulation that the Town's preliminary resolution "meets all the statutory requirements of WIS. STAT. § 66.0703(4)." We address this argument, however, as it was fully briefed and argued before the circuit court and on appeal, and the Town never raised the stipulation in its defense.

§ 66.0703(5), (6); notice regarding the work, the report, and a hearing on the matter must be given, § 66.0703(7); and a public hearing must be held where "all interested persons, or their agents or attorneys, may appear . . . and be heard concerning the matters contained in the preliminary resolution and the report," *id.* Following the hearing, "the governing body may approve, disapprove or modify, or it may rerefer the report . . . to change the plans and specifications and to accomplish a fair and equitable assessment." Sec. 66.0703(8)(a). If the governing body decides "to proceed with the work or improvement, it shall approve the plans and specifications and adopt a resolution directing that the work or improvement be carried out and paid for in accordance with the report as finally approved." Sec. 66.0703(8)(c).

¶ 24. These procedural requirements clearly show that the statute contemplates changes to the "plans and specifications" of a public improvement project between the preliminary resolution and report and the adoption of a final resolution. The Bank fails to point to any authority to support its assertion that variances in the scope of a public improvement project between what is called for in the preliminary resolution and what is ultimately adopted by a governing body renders a special assessment void. The Town's preliminary resolution announcing its intention to pave and grade roads in the Barony subdivision was sufficient to "generally" describe the "contemplated purpose" of the special assessment.

¶ 25. We are also unpersuaded by the Bank's argument that the final resolution did not comply with the requirements of WIS. STAT. § 66.0703(8)(c) as it "does not contain the necessary language." The Town's

failure to mimic the precise words of the statute in its final resolution is not comparable to the procedural failures outlined in *Thomas v. City of Waukesha*, 19 Wis. 2d 243, 249–50, 120 N.W.2d 58 (1963), the case relied upon by the Bank. In *Thomas*, the court addressed whether the city, by proceeding under the predecessor statute to § 66.0703 without filing a statement as required by that statute that it was exercising its police power, could still make an assessment. *Thomas*, 19 Wis. 2d at 248. The court found this failure to be "fatal to the exercise of the police power" and declared the special assessment "null and void." *Id.* at 250–51. The city's complete failure to file a statement that it was exercising its police power in *Thomas* is a far cry from the Town's alleged failure here to not use the exact words of the statute in its final resolution. Section 66.0703(8)(c) imposes no such requirement. The final resolution's adoption and approval of the report and its ratification of "[a]ll actions heretofore or hereafter taken for the purpose of carrying" out the special assessment on the properties in the Barony subdivision, therefore, was sufficient under the statute.

## CONCLUSION

¶ 26. A municipality does not lose its police power when it enters into a development agreement. In light of Barony LLC's failure to meet its obligations to build and pay for the roads, the Town had the authority to levy a special assessment upon properties in the subdivision. We affirm the circuit court's overall validation of the special assessment. We reverse and remand for further proceedings that part of the court's order granting summary judgment as to lots four, five, and fifty-five as there is a genuine issue of material

fact as it relates to whether those three properties received a "special benefit" as a result of the road work.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.